BRINK, Appellant, v. DANN, Treasurer, et al., Respondents

(144 N. W. 734.)

1. **Taxation—Void Tax Deed—Remedy—Injunction Against Issuance of Deed.**

   A property owner may enjoin issuance of a void tax deed, and thus prevent clouds on title, where the assessment is inequitable as well as void.

2. **Tax Deeds—Action to Enjoin—Unknown Amount Due—Tender of Taxes.**

   If, in a suit to enjoin issuance of tax deed, as void and inequitable, the amount of tax the owner should be required to pay appears by the complaint to be uncertain or unknown, no tender of the taxes need be made, though, if during the trial the amount of taxes plaintiff should pay in order to proceed became certain, the court might require such payment before proceeding.

3. **Assessment—Lost Return—Oral Evidence—Supplying Defects.**

   Oral evidence is admissible to prove the contents of a lost written return to an assessment of property for taxation; but it is not admissible to supply a return, or defects in a return as made. The return is an integral part of the assessment, which must stand or fall as made and returned.

4. **Assessment—Statutory Regulations—Mandatory.**

   Statutory provisions regulating assessments, which are enacted for the taxpayer's benefit or protection, are mandatory, and an assessor's failure to comply therewith makes the assessment void.

5.  **Assessment—Return—Detached Oath to Return—Presumption—
    Irregular and Void Returns—Valuation.** ·

    Where an assessor's oath was not "attached" to his return,
    as provided by statute, but was merely laid in the assessment
    roll, held, there was no presumption that it remained in the
    book; and the assessment was invalid for want of proper
    oath, as were assessments where the form of oath attached to
    the real estate return was that provided for personal property
    returns, and where it showed the assessment to be "a full
    and true value" instead of the "cash value" thereof.

6.  **Void Tax Deeds—Relief by Injunction—Inequitable and Unjust
    Assessment—Burden of Proof.**

    The issuance of tax deeds will be enjoined, at the suit of the
    property owner, where the assessment is so inequitable and
    unjust as to amount to a fraud upon him; and the burden of
    proof is upon plaintiff to prove that such assessment would,
    if valid, have been inequitable and unjust.

7.  **Assessment—Defective Oath—Presumption as to Valuations.**

    While an assessment roll, invalid for want of a proper oath,
    is not evidence of the uniformity or equality of the purported
    valuations therein contained, yet no presumption arises there-
    from, that such valuations are inequitable; and in absence of
    proof that such valuations were inequitable and unjust in
    comparison with valuations of other property, such purported
    valuations will, for purposes of a suit to enjoin issuance of
    tax deeds, be presumed to be equitable and just when so com-
    pared with other valuations.

8.  **Invalid Assessment—Right to Prove, In Equity—Restraining
    Collection of Taxes—Remedy.**

    Where an assessment of property is invalid, the property
    owner had the right to prove that the purported assessment
    was unjust and inequitable, in a suit to enjoin issuance of tax
    deeds, and need not resort to a suit to restrain collection of
    the taxes.

9.  **Tax Sales—Sale Certificate Held by County—Recitals in—Com-
    petitive Bidder—Contradiction of Recitals.**

    Under Pol. Code, Sec. 2199, providing that a purchaser of
    land at tax sale is entitled to a certificate describing the land,
    the sum paid, and stating the time when purchaser will be en-
    titled to a deed, held, that a certificate containing all that said
    section provides it should contain, is prima facie evidence of
    the regularity of "the proceedings" pertaining to such sale;
    and if it contains other recitals which would tend to show
    some irregularity in proceedings, such further recitals would
    simply destroy the certificate as evidence of the regularity of
    such particular proceedings, and evidence is admissible to con-
    tradict the superfluous statements in such certificate, since the

tax deed rests upon the sale and not upon the certificate there-
of; hence, a recital in such certificate issued to a county, that
the county was a competitive bidder, may be contradicted by
evidence aliunde.

10.   Tax Sales—Sale to County—Necessity of Bid—Voidable Sale—
      "Secret Sale."

      Where evidence shows that at tax sales there were no bid-
ders other than the county, but also shows that no public bids
were made on behalf of the county, and that when property
was offered and there were no bidders, the treasurer issued
certificates to county without any formal bid on behalf of
county, held, that, in view of Pol. Code, Sec. 2203, leaving to
county treasurer discretion whether he shall bid in property
for the county at tax sales, and Sec. 2201, providing for a
private sale after the tax sale is closed and the treasurer has
made his return of the lands unsold for want of bidders, sales
to county, shown as aforesaid, were at least voidable, if not
absolutely void, as "secret sales."

11.   Limitation of Actions—Tax Sale Certificates, to County—Agency
      For State.

      Unless the statute specifically so provides, a statute of lim-
itations cannot apply to a county and prevent it performing
its public duty as agent or trustee of the state, as well as of
political divisions less than itself, such as the collection of
taxes; hence, Laws 1909, Ch. 10, fixing a limitation of six
years from date of issuance of a tax certificate within which
to commence proceedings to procure tax deeds, does not apply
to certificates held by a county.

12.   Taxation—Redemption—Condition of—Payment of Subsequent
      Taxes—"Subsequent Tax."

      Pol. Code, Sec. 2203, provides that, whenever a county ac-
quires an interest in realty by bidding at tax sale, such realty
shall not be again advertised and sold for delinquent taxes so
long as county retains its interest therein, and that all taxes
subsequently accruing against such realty, or that were unpaid
at time of sale and a lien thereon, but not included in the bid,
shall be deemed a "subsequent tax," and before the county can
make an assignment of its interest in the realty, or assign
such certificates, all such taxes must be paid in full, including
the amount for which the land was bid off, and gives the
county as such purchaser all rights, legal and equitable, that
any purchaser could acquire at tax sale purchase. Sec. 2205
provides that one seeking to redeem from a sale to county shall
pay the amount of taxes, with penalty and interest, up to
date of redemption, and cost of sale, and upon making such
payment the treasurer shall issue a certificate of redemption
and a tax receipt in duplicate for "said taxes, penalty, interest

and costs." Sec. 2206 provides that any person desiring to purchase the interest of the county in a tax sale certificate may pay the amount of the taxes, penalty, interest, and costs of sale and transfer up to the date he so pays, and that treasurer shall deliver to him the county certificate of sale, which assignment and transfer shall convey to purchaser of rights of county, legal and equitable, the same as if he had been the original tax sale purchaser. Sec. 2209 provides that one claiming a part of any land sold for taxes may redeem on paying the purchase money of such part, together with interest and subsequent taxes. All of said sections as they now exist, except Sec. 2203, were enacted as part of Ch. 28, Laws 1897, a general statute upon assessment and taxation; while the provisions in Sec. 2203 (which section was originally part of said law of 1897), prohibiting a re-sale after county has purchased, etc., and concerning the payment of subsequent and prior unpaid taxes by a purchaser of county's certificate, and making such taxes "subsequent taxes," etc., were inserted therein by an amendment in 1901. **Held,** that the owner of land, in order to redeem from a tax sale made to the county and where the tax certificate is still held by it, must also pay the taxes due and payable after date of tax sale to county; that the word "taxes" in Sec. 2205, must be construed to mean "subsequent taxes" as defined in Sec. 2203, and a tender of the amount covered by the tax sale certificate itself, with penalty, interest and cost of the sale on which the certificate issued, is not sufficient to effect redemption therefrom; although, prior to said amendment, such tender would have been sufficient.

**13.   Statutes—Construction—Re-enactment—Legislative Intent.**

The Supreme Court will presume that the legislature, when it re-enacted a law by adopting it in the Code, intended that such law, except as amended, should be construed as it would have been construed prior to such re-enactment.

**14.   Statutes—Construction—Taxation, to Effectuate Legislative Purpose—Express Words, When Unnecessary.**

In construing statutes relating to tax proceedings, the legislative intent is the vital and controlling factor, as in other cases; and a construction which will effectuate the general legislative purpose should be adopted rather than one which necessarily defeats such purpose. In ascertaining the legislative intent, the entire language and general purpose of the enactment will be taken and construed together. And where the purpose and intendment of a statute as a whole are apparent, express words as to such purpose are not always necessary.

**15.   Taxation—Tax Sales—Enjoining Tax Deed—Compromise of**

Taxes by County Commissioners—Other Property Owners—Evidence—Plaintiff's Remedy.

The fact that county commissioners compromised taxes against property of taxpayers other than plaintiff, similarly situated, neither shows that such compromises were proper, nor that compromises should be made on plaintiff's taxes, and hence evidence of such other compromises was not admissible in a suit to enjoin issuance of tax deeds to a county on a certificate issued to it; plaintiff's only remedy as to any improper compromises being to compel county commissioners to pay into county treasury the money lost to county by such compromise. So held, in construing Secs. 2222, 2223, and 2224, Pol. Code.

16.   Tax Sale—Irregular Sale—Injury to Plaintiff—Costs of Sale.

Where tax sales were irregular, and voidable, if not void, held, that in a suit to enjoin issuance of tax deeds on such sales, the injury which plaintiff has shown was done to him by reason of such sales, is only the amount of costs of the sales.

17.   Tax Sales—Suit to Enjoin Issuance of Tax Deeds—Decree Refusing Injunction—Time For Plaintiff to Redeem.

Where, in a suit to enjoin issuance of tax deeds under tax certificates issued to a county, upon irregular and voidable sales, the trial court denies such relief, held, the decree should have provided for a reasonable time within which plaintiff might redeem from the several sales.

Polley, J., dissenting.

(Opinion filed December 30, 1913.   Rehearing denied July 2, 1914.)

Appeal from Circuit Court, Hughes County.   Hon. Levi McGee, Judge.

Action by A. C. Brink against J. G. Dann, as treasurer of Hughes County, South Dakota, and another, to enjoin issuance of tax deeds to the county, under tax sale certificates held by it. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals.   Affirmed as modified.

*Sutherland & Payne,* and *Chas. E. DeLand,* for Appellant.

Provisions in the tax law which are intended for the benefit of the tax payer are mandatory, and must be substantially complied with throughout, in tax proceedings, to secure the latter's validity.   Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188.

As to the assessments for the years 1900 to 1910, inclusive; there is either no return of the assessor for said years, or any of them, or the return made is not in the form provided by law. Section 2101, Political Code.

The assessment books for the years 1900 to 1907, inclusive, did not contain the names of the owners of real estate.

Notwithstanding the above record, the court found that the assessments on the property in question were duly and legally made for all the years from 1900 to 1910, both inclusive. The court appears in this finding, without reference to the facts as brought out in the evidence, to have found in detail as our code provides assessments should be made, and even to have gone farther by making findings number 6, 7, 8, 9 and 10, regarding most of which, the evidence presented was exactly contrary to the finding, or there was a total absence of any evidence regarding the matter found. In these, the court found, not according to the evidence, but according as the assessment should have been made as provided by law.

The omission of a proper return by the assessor is fatal. Richardson v. Howard, 120 N. W. 678 (S. D.)

The description of the lots is insufficient, owing to the failure of the assessor to indicate the block by figures or ditto marks. The rule is that words necessary to identify the land will not be supplied by intendment. Blackwell on Tax Titles, Sec. 226. Orton v. Noonan, 23 Wis. 102. The validity of taxes must be made to appear by common law proof. Each essential step in the process of laying the tax must be established by competent testimony, and the burden is upon the purchaser. O'Neil v. Tyler (N. D.) 53 N. W. 434. Black on Tax Titles, Sec. 246, 247 and 249. Sheets v. Paine, 86 N. W. 118. Bird v. Benlisa, 142 U. S. 664, 12 Sup. Ct. Rep. 323. Sec. 2101, Political Code.

Redemption from these tax sale certificates requires only that payment be made of the amount of each certificate appearing to be due thereon with interest and penalty to date of payment—does not require payment of subsequent or prior taxes.

Only the amount called for by the particular certificate is necessary to be paid or tendered in order to redeem. The amendment of 1901 to Sec. 2203, Pol. Code, in no way refers to or affects the right of property owners to redeem, but said amendment was intended, wherein it makes it necessary to pay such prior and subsequent taxes,—to apply only to tax sale certificates *sold and assigned* by the county to a *purchaser*—in other words, where the holder of the certificate issued to a county seeks to ac-

quire an interest in the realty *adverse to the owner*. This is the plain meaning of the amendment, and the legislature did not intend thereby to alter the relations of an owner to his former right to redeem, or to add anything to his obligation or burden as a redemptioner.

It is too clear for controversy, that prior to said amendment of what is now Sec. 2203, Pol. Code, a redemption could be made from a tax sale certificate issued to a county, by simply paying the sum called for by the certificate, with interest and penalty, the same as could be done in redeeming from a certificate issued to and held by an individual (unless the individual holder of the certificate had paid subsequent taxes, or taxes levied previously to the tax sale and not included in such sale). This is clear from Sec. 120, Chap. 28, Laws of 1897 (now Sec. 2199, Pol. Code 1903), which gives a *purchaser* at tax sale (other than the county) a lien "of the tax on the land"—that is, a lien of the tax for which the land is sold at tax sale—and a lien also for such subsequent or prior taxes paid by him as holder of the certificate. And under Sec. 115, Chap. 28, Laws of 1897 (now Sec. 2194, Pol. Code), sales for all delinquent taxes must be made—in other words, an annual sale of each and every lot against which such taxes existed; and under this and other related provisions of the law of 1897, the *county* might become a purchaser of any tract or lot, even though it had purchased the realty at a previous sale or sales. And under Sec. 124, Chap. 28, Laws of 1897, (Sec. 2203, Pol. Code of 1903 before its said amendment) the county was authorized "at all tax sales" where no other bidders appeared, to bid off "all or any real estate offered" at the sale, "said county acquiring all the rights, both legal and equitable, that any purchaser could acquire by reason of said purchase"— and that section, *defining* the county's rights, by necessary implication *limited* those rights to such as a private tax sale purchaser had under Sec. 120 Chap. 28 of said Laws of 1897 (now Sec. 2199)—that is, where a private purchaser at tax sale had not paid subsequent or prior taxes, a redemptioner was not required to pay more than the tax sale certificate called for; and this is further shown by Sec. 125, Ch. 28, Laws of 1897 (now Sec. 2204, Pol. Code), as regards a certificate held by the county, which provides for issuance to county of certificates "in the same manner

as required if sale had been made to any other person." And
the intent that no more than the amount of the particular tax
sale certificate with interest and penalty, etc., is required in order
to *redeem* from a certificate held by county, is clearly indicated
by Sec. 126, Ch. 28, Laws of 1897 (now Sec. 2205, Pol. Code),
providing that redemption may be made by "paying the amount
of taxes with penalty and interest up to the date of redemption,
and the costs of advertising and selling the same;" upon pay-
ment of which sums a "certificate of redemption" shall be given
"the person so redeeming;" and a tax receipt is required to be
issued to redemptioner "for said taxes, penalty, interest and
costs." And Sec. 127, Chap. 28, Laws of 1897 (now Sec. 2206,
Pol. Code) provides that a person may purchase "the interest of
said county" in the land, by paying "the amount of the taxes,
penalty, interest and costs of sale and transfer up to the date he
so pays." And the interest of the county in the certificate un-
der Sec. 2207, Pol. Code, is only to the extent of what is called
for by the *particular certificate of sale held by the county under
tax sale for some one year*,—"said sale" referring of course to a
single sale.

In other words: The entire revenue law under Chap. 28,
Laws of 1897, limits the interest of the county under a tax sale
certificate issued to it, to what is called for by the particular cer-
tificate and also conditions a *redemption* from such certificate up-
on payment to the county of such amount only. The words
"taxes with penalty and interest," etc. in Sec. 126 and 127, mean
"taxes" for which the land was sold for the one year evidenced
by the certificate, with interest and penalty *on said taxes* "up to
the date of redemption"—and this term last quoted refers to such
"taxes" so evidenced, for one year, and does not mean—as con-
tended by the county treasurer—"taxes for said year and for all
subsequent years" or "prior years" with penalty and interest on
the latter. And the rights given to a purchaser of the certificate
from the county (under Sec. 2206) likewise limits his rights
thereunder to what he has paid the county—unless he has, under
Sec. 2199, *actually paid* subsequent or prior taxes after acquiring
the certificate. And the amendment of said Sec. 124, Ch. 28,
Laws of 1897, by Chap. 46, Laws of 1901, in no respect changes

this state of things, as regards *redemption* from a certificate held by the county.

Before the 1901 Amendment the practice under tax sales resulted in many counties becoming holders of tax sale certificates, and increasing tax sale expenses, while it permitted speculators in tax sale certificates to acquire the county's interest by simply paying the amount of the certificate with interest—thus securing a tax lien *adversely* to the owner and under which the speculator, the *purchaser* of tax certificates, could easily place the owner of the realty in jeopardy concerning getting tax title. And to *remedy* this state of things, the legislature provided in the second proviso to this amendment, that henceforth, in order to purchase a tax sale certificate held by the county, the purchaser—the speculator, the person who would hold *adversely* to the *owner*—must, as a condition to the purchase, pay "all such" taxes as well as those called for by the particular certificate purchased; thus in effect paving the way for clearing up such subsequent and prior taxes incidentally to such purchase, thereby increasing the public revenues.

The Statute of Limitations, Chap. 10, Laws of 1909, bars Hughes County from taking out tax deeds on certificates under tax sales of 1901, 1903 and 1904.

The statute of limitations applies to counties as well as individuals. Sec. 67, Code Civ. Proc. The county, as a holder of such certificate, is given by the statute only the same rights as those possessed by an individual holder of a tax certificate. Sec. 2206, 2203, Pol. Code.

But, if a county holding a certificate were not included in such a law as Chap. 10, Laws 1909, and could hold it indefinitely without losing its right of action thereunder, an absurdity would result. For the county, and its assignee, would both be thereby deprived of a substantial benefit—the county of the right to assign the certificate, and the assignee of the right to take out tax deed after purchasing the certificate. This result must follow under the opposing theory; for the moment that the county seeks—after the period prescribed in this statute had expired—to sell the certificate, it would find itself shorn of the right to place in an individual holder of it the right to take out deed; and such prospective purchaser would acquire only a worthless paper. A

legislative act will not be given a construction involving a ridiculous consequence.

The authorities clearly support the contention that the state and the county are within the statute of limitations concerning rights arising under the tax laws. Harris v. Stearns, 17 S. D. 442. City of Centerville v. Turner County, 23 S. D. 424. City and Co. of San Francisco v. Jones, 20 Fed. 188, and Cal. cases cited. And the statute there involved is precisely the same as our Sec. 67, C. C. P. above referred to.

The statute of limitations concerning tax certificates constitutes a *contract* right. And where contract rights are involved, the statute of limitations applies to the state and to counties, the same as to individuals. 2 Desty on Taxation, 1056. Municipal corporations, like private persons, may plead or have pleaded against them the statute of limitations. Logan v. Lincoln, 81 Ill. 156 (158). Dillon on Mun. Cor. Vol. 2, Sec. 532-3. 12 Ill. 38. City v. Whipple, 71 Mo. 519 (521.)

The rule of nullus tempus, etc. is not applicable to suits for or against individuals acting for or under authority of a government, and as to them the statute runs for or against such claims the same as it does against others. I Wood on Lim. pages 116, 117. Hartman v. Hunter, Treasurer, 56 Ohio State 175.

When the United States becomes a party to a suit in court, it is barred by the same principles that govern individuals. U. S. v. Beebe 17 Fed. 37; affirmed in U. S. v. Beebe, 127 U. S. 346. U. S. v. McElroy, 25 Fed. 804.

And 13 Encyc. of Law, 714-15 lays down the now well established proposition, that the statute of limitations "in general applies to towns, cities, counties, school districts, as fully as to individuals;" citing an array of authorities.

The mere fact that the tax deed, under Sec. 2213, Pol. Code, nominally runs from the State, though executed by the county treasurer, is not significant as to the rights of municipalities relatively to those of the State, and which rights are involved in every tax levy following which every tax deed is made. The interest which the state has in the general tax levy is a mere fraction of that of the county and of the city.

*The tax sale certificates involved in his suit are void upon their face; deeds should not issue upon them; they should be cancelled and set aside.*

They recite among other things that the property was sold to Hughes county for the sum of ——— dollars, at the rate per cent per annum above named," that being the lowest rate offered, he being the highest and best bidder for the same." And the rate per cent. bid, as shown in the body of each and all of these certificates, is 12 per cent, excepting for 1903 where the rate per cent is lacking.

It needs no citation of authorities to establish that the tax sale certificates issued under these sales, for the years 1901, 1904 and 1906, are absolutely void on their face, it appearing therefrom that Hughes County in making the purchases therein referred to was a competitive bidder and a purchaser of the lots at public auction.

Under Sec. 1630, Comp. Laws of 1887, Sec. 124 of Chap. 28, Laws of 1897, which is precisely the same, and under the present law, Sec. 2203, Rev. Pol. Code of 1903, it is provided that the county treasurer "is hereby authorized * * *, in case there are no other bidders offering the amount due, to bid off all or any real estate offered at said sale * * * in the name of the county," etc.

Therefore, unless there are no other bidders, and no other bidders "offering the amount due," the county is not "authorized" to bid or purchase.

All facts required by law to exist before the sale *must* exist or there can be no valid sale. Blakewell on Tax Titles, Sec. 486.

Any tax deed issued pursuant to these tax certificates, must recite the facts that are recited in the certificates; and any such deeds would be void.

A tax deed purporting to have been issued on a private sale must recite that the land had been previously offered at public sale for the same taxes and had not been sold for lack of bidders. Blackwell on Tax Tit. Sec. 487. Ludden v. Hansen, 17 Neb. 356.

The certificate or return of sale must show that the statutory steps which authorize the sale, had been made—in fact, all other particulars connected with it which the law requires. "The object of this legislation is to perpetuate the facts attending the transac-

tion, to enable the owner to learn from the record the fact that his land has been sold, and to guide the officer entrusted with the power in the execution and delivery of a conveyance to the purchaser." Kellogg's Lessee v. McLaughlin, 8 Ohio 114.

"It is neither safe nor expedient to leave the title to real estate to depend, in any case" upon facts not shown in the certificate. Blackwell on Tax Tit. Sec. 642.

If a tax certificate fails to show that any of the proceedings preliminary to the sale and on which its validity depends were in fact taken it is void. "It must show, step by step, that everything has been done which the statute makes essential to the due execution" of the power of the officer to make sale as made. 2 Desty on Taxation, page 856. King v. Lane, 21 S. D. 101. Thompson v. Roberts, 16 S. D. 403.

Tax sales constitute contracts, and "the terms of such contract are found in the law in force at the time, and under which the sale was made." State ex rel. Waldo v. Flypaa, 3 S. D. 586. King v. Lane, 21 S. D. 101. Reckett v. Knight, 16 S. D. 395. Redemption from the sale is unnecessary where the sale is void. Black on Tax Tit. Sec. 381.

The officer acts at his peril selling and making his return, and *the owner in determining whether he will redeem, or contest the title of the purchaser, as shown by the return."* Id. In section 644 of Blackwell, this proposition is pursued further: *"The return is essential* (italics the author's own) to enable the owner to determine upon his course of action, and as it is beneficial to him that the return should be made, that return becomes an important prerequisite, and unless made in the time and in the mode prescribed by law, no title will pass to the purchaser at the sale." 2 Desty on Taxn. page 855. 61 Cal. 524. 5 Oreg. 191. 75 Mo. 530.

Oral evidence is inadmissible to vary the recitals in Tax certificates, or to show that these tax sales to the county were not competitive and public. Blackwell on Tax Titles, Sec. 642. Kellogg's Lessee v. McLaughlin, 8 Ohio, 114, Reckett v. Knight, 16 S. D. 395 (400). King v. Lane, 21 S. D. 101 (104). Vanderlinde v. Canfield, 40 Minn., 541, 42 N. W. 538. Cartright v. McFadden, 24 Kas. 622; Hannerkratt v. Hamil, 10 Okla. 219 (239). Larkin v. Wilson, 28 Kans. 367. Wigmore on Ev., Sec. 1633, Vol. 3, page 1981.

The testimony shows that in fact no sale or sales whatever were made to the county—that the whole process, so far as regards pretended sales to the county, was one of a subsequent process—after the sales proper were ended, of "marking up" the lots as though they were sold to the county, there being in fact no non-competitive bid even, by the county—no contract of sale—nothing on which to base a transaction of tax sale.

Bystanders are presumably present watching to see what property is actually sold. Owners may be present watching to see if their property is sold. How can anyone present have any evidence that a sale has been made, to the county, unless some one representing the county speaks out and buys a lot, *showing* that he purchased for the county? Unless there is some token *in words*, and some memoranda *accompanying* the act, no evidence exists of a sale.

The oral evidence of Conniff, and Martin, to bolster up the assessment records, was incompetent and should have been excluded.

The court erred in refusing to admit evidence concerning compromise and rebate of taxes by county commissioners.

Plaintiff offered on the trial, proof of the practice of Hughes county commissioners for many years then passed and down to 1910 inclusive, and in many cases, to compromise and rebate delinquent taxes on realty similar to and in like years and with like tax record as those pertaining to the lots in question; taxes being thus cut down to 20 to 30 per cent. of taxes, penalty and interest. This offer was rejected. We contend that, in connection with plaintiff's offer and tender of 20 per cent. of the taxes due, etc., as made before suit and on the trial, this ruling was material error; that thereby discrimination against plaintiff as a taxpayer under the general and special statutes involved, was exercised, to his prejudice. Secs. 2222, 2223, 2224 Pol. Code. Sec. 2203 Pol. Code.

The table of prior unpaid taxes, made and referred to by defendant Dann as treasurer, [Fol. 157-168] shows that these lots had been offered for sale "two successive years" and received no purchasers, prior to the sales under the Scavenger Law of 1899. [Ex. "A," referred to at Fol. 165.] Such offers may have been because of depreciation of property, "or otherwise." It is equally

clear from all the evidence that the county could not realize full taxes by sale or otherwise.

If they had compromised, and accepted these tenders, the county could then have sold and assigned these certificates; because either a speculator, or plaintiff himself could then see his way to paying up on these certificates, the county would have brought money to its treasury, and would have placed all this property where its owner would promptly pay the taxes hereafter,—the very object of these compromise laws. Anything but a spirit of equity is manifest as to Hughes county in the case at bar.

Injunction is the proper remedy. The tenders made are proper and sufficient.

Injunction lies to restrain, etc., where authority to make tax levy is wanting. Lee v. Mellette, 15 S. D. 586, and cases there cited.

. All of the alleged assessments of lots are void. Upon that basis of fact, no offer or tender of money by way of payment of taxes, as a condition to relief in equity, is necessary. But if any portion of the taxes which may be valid are involved in a suit, a property owner who has tendered payment of the taxes due on the portion legally assessed, may maintain an action to enjoin a tax sale under void proceedings. Dakota L. & T. Co. v. Codington County, 9 S. D. 159. State Finance Co. v. Trimble, (N. D.) 112 N. W. 984; Same v. Halstenson (N. D.) 114 N. W. 724; McKinney v. County, 17 S. D. 409.

Injunction in these cases is also necessary, to prevent multiplicity of suits; to remove clouds from the title to these properties, and to prevent irreparable injury through issuance of tax deeds, and sales of these lots by the county to third persons— which it is also alleged they threaten to and will do unless restrained, and which the answers admit they intend to and will do, etc. [Fol. 53, 56, 86.] McComb v. Lake County, 9 S. D. 466.

In Salmon v. Lathrop, 10 S. D. 216, this Court held—after deciding that the instruments there involved were void—that "under allegations and proof that the defendants' claim of title is without foundation in fact or law, and the deed upon which he relies is void upon its face, no payment or tender is necessary."

Nor was it necessary for these plaintiffs to plead in the complaint an offer to pay any taxes, in view of the alleged voidness of these certificates. Clark v. Darlington, 7 S. D. 148 (152), Power v. Larrabee, 2 N. D. 141 49 N. W. Also (N. D.) 87 N. W. 188. And in no case is it necessary to offer or tender more than the amount legally due or chargeable. Bode v. Investment Co. (N. D.) 42 N. W. 658.

*H. R. Horner, Glenn W. Martens, Karl Goldsmith* and *T. C. McNamee*, States Attorney, for Respondents.

There was no evidence introduced by the Appellant that the particular acts and things mentioned in said finding were not done and performed by the different officers, and the presumption being that the officers did their duty, and there being nothing to show to the contrary, the court made its findings in accordance therewith. Speegle v. Leese, 51 Col. 415; Lewiston v. Ryan, 17 Pac. 239; Monterey County v. Cushing, 23 Pac. 701; Peters v. Lohr, 24 S. D. 609.

When he goes into a court of equity appellant must show that some injury has resulted to him from these claimed errors, outside of a general statement in the complaint that his property is taxed out of proportion to other property in the city. There is nothing in the record that shows that he has been injured in any way, and no evidence was offered at the trial to prove this statement made in the complaint. Frost, et al. v. Flick, 46 N. W. 508. Avant et al. v. Flynn, Treasurer, 2 S. D. 153. Bandow v. Wolven, 20 S. D. 445. Before the appellant should be allowed to proceed in the prosecution of the suit he should be required to deposit the taxes due, including the costs. Section 2214, Political Code.

Where it appears in the pleadings that a tax certificate or tax deed is involved, and also when at the trial it appears that they are involved, then the action shall not proceed until this statute is complied with. To meet the construction of this statute as made by the courts in Campbell v. Equitable L. & T. Co. 14 S. D. 483; Salmer v. Lathrop, 10 S. D. 227, and Clark v. Darlington, 11 S. D. 418, the Legislature in 1901 amended Section 133 of Chapter 28, Laws of 1897, by adding thereto the latter portion of said Sec. 2214. This section has been construed since the trial of this case. Hannahs v. Provine, 28 S. D. 203.

Under Secs. 2199, 2203, 2205, 2206, 2208, Pol. Code, the taxes not included in the tax sale certificate are considered and made a part thereof, and before the county can assign, transfer or part with its interest in the certificates the whole amount of the taxes, penalty and interest up to the date of redemption, assignment or transfer, must be paid. Gibson v. Pekarek, 27 S. D. 423.

For the year 1900 the Assessor's oath to the real property is not in the book, but Mr. Conniff, the assessor, testified to making the oath and placing it in the book.

For 1901, the oath of the Assessor seems to be lacking from the book. Conniff testified to taking the oath and returning it and called attention to the assessment book and to the part of the blank from which the oath had been cut out of the book.

For 1902, discloses the Assessor's regular returns.

For 1903, discloses the Assessor's oath is not in the book. Conniff testified to making the return as Assessor and attaching it to the book, and calls attention to where it had been torn from the book.

There were three books in which the assessment was made for 1904, two containing the real and one the personal property. The personalty book contained the certificate of posting of notices by Assessor, as to the time and place of meeting of the Board of Review, and the Certificate of the Board of Review of its meeting, and attached to this book was the proper Assessor's return oath as to the assessment of real property in the city, signed by the Assessor, but the officer administering the oath did not sign the same. Conniff testified to returning the assessment rolls and taking the oath for each year that he was Assessor.

There were three books containing the assessment roll for 1905, two containing the real and one the personal property. The Assessor made two return oaths to the real property for that year. One was in one of the realty books and the other was in the personalty book. In one of the returns the officer administering the oath signed his name and in the other he omitted it, both of them, however purport to be subscribed and sworn to.

As to books for 1906, the same statement as to 1905 applies.

The return for 1907 was in the back of one of the realty assessment books and is correct in form, except that no seal of the person administering the oath is attached.

For 1908, there were three books constituting the assessment roll of the realty and personalty, two containing real and one personal property. In the personalty book was the Assessor's return oath to realty in proper form.

For 1909, there were three books, two containing the real and one the personal property. In the personalty book, the Assessor's return oath to realty is in proper form, sworn to before the Deputy Auditor, but the Assessor's signature is lacking to oath, but someone appears to have drawn a line across the return. The Assessor testified to taking the oath, that the line was not there when he returned the assessment roll and that he did not make it.

There were three books for 1910, two containing the real and one the personal property. In the realty book, the Assessor made the personal property returns, and in the personalty book he made the realty returns. The return oaths were in proper form.

Absence of signature of Assessor, and failure of the County Auditor to swear or subscribe to the assessment roll will not invalidate a tax founded on the proceedings. Avant v. Flynn, Treasurer, 2 S. D. 153. Peters v. Lohr, et al., 24 S. D. 605. Bandow v. Wolven, 20 S. D. 445.

Oral testimony is admissible to show that assessor had taken the oath. Peters v. Lohr, et al., 24 S. D. 608.

Chapter 10, Session Laws of 1909, as a statute of limitations, does not run against the State or any of the municipalities inherent and connected therewith.

Taxes levied for a general revenue and the proceedings to enforce the same are in effect the state's. See form of deed provided by law, Section 2213, Political Code. Am. & Eng. Enc. of Law, Vol. 19, page 191. Wasteny v. Schott, 51 N. E. 34, and 58 Ohio St. 410. Greenwood v. Town of LaSalle, 26 N. E. 1089. Hood v. New Orleans, 49 La. Ann. 1461, 22 So. 401; City of Memphis, 9 Baxter (Tenn) 130; Hagerman v. Territory, 66 Pac. 526; Iowa Land Company v. Douglas Co., 8 S. D. 504; Wells

County v. McHenry (N. D.) 74 N. W. 247. Lincoln St. Ry. Co. v. City of Lincoln, 84 N. W. 816; Also Wygant v. Dahl, 42 N. W. 735.

Chapter 10, Session Laws of 1909, cannot be deemed to include tax certificates held by the county, as such tax certificates when retained by the Treasurer, cannot be said to be issued within the meaning of the law. They are simply held by the treasurer as evidence of one of the means taken to enforce the collection of taxes. Section 2204, Pol. Code.

Section 67, Code Civ. Proc. does not apply to actions brought in the name of the state or for its benefit. Iowa Land Company v. Douglas County, 8 S. D. 504. Angell on Limitation, Section 37, page 31; 19 Am. & Eng. Enc. of Law, 188; and cases cited under Note 12. Section 2212, 2213, Pol. Code. Black on Tax Titles, Sec. 164. Lewis v. Rothchild, 92 Cal. 625; 28 Pac. 805; Wells County v. McHenry, 74 N. W. 247; Corley v. Sewell, 77 Ind. 316; Hayden v. Foster, 13 Pick. 492; Auditor Gen. v. Carpenter, 101 N. W. 1025; Skinner v. Christie, 29 Atl. 772.

The county was not a competitive bidder at the sales, and the certificates are not void on their face by reason of their containing the following: "That being the lowest rate offered and he being the highest and best bidder for the same."

Respondent, Treasurer of Hughes County, introduced oral evidence for each year showing that there was no such thing as competitive bidding on the part of the county, and that the county in no instance was a bidder at the sale or sales, and only in case that there were no bidders was the property struck off to the county.

The certificate is only evidence of the facts that the Treasurer is authorized to place therein, and even then it is not conclusive. Section 2199, Political Code. Wigmore on Evidence, Vol. 3, 2083; Overing v. Foote, 43 N. Y. 292. Tifet v. Green, 211 Ill. 391.

The tax deed is made evidence of the truth of the recitals contained therein. Section 2199, Pol. Code. See Section 2204, Pol. Code. Section 2199 does not make the certificate evidence of any kind, prima facie or conclusive, but it is presumptive evidence of the regularity of all prior proceedings. Oral evidence is admissable as to the official acts of the taxing officers in tax pro-

ceedings. Avant et al., v. Flynn, 2 S. D. 156; Bandow v. Wolven, 20 S. D. 445; Peters v. Lohr, et al., 24 S. D. 608; State v. Aldridge, 66 Ohio St. 598, 64 N. E. 562; Hagerty v. Huddleston, 60 Ohio St. 149, 53 N. E. 960; Lewis v. State, 59 Ohio St. 37, 51 N. E. 440; French v. Spaulding, 61 N. H. 395.    Vol. 17 Cyc. page 313.

The court did not err in refusing to admit evidence concerning compromise and rebate of taxes by county commissioners. Appellant claims to have gone before the board of county commissioners with a view of compromising the taxes, and claimed to have had some talk with the members of the board with reference thereto. The error complained of relates to the refusal of the court to admit evidence concerning compromise and rebate of taxes by county commissioners, not as to any of the property involved in this action, but as to other property belonging to other people and not connected with this action in any way. This has nothing to do with the case at bar. That the county commissioners have the power under section 2222, Political Code, to compromise taxes, there can be no doubt, but it must be done only when the amount of taxes cannot be realized by sale of the property or otherwise.

WHITING, P. J. Action to enjoin issuance of tax deeds to county on certificates purporting to be issued upon bids made by such county. Plaintiff alleged, but offered no proof to sustain the allegation, that the assessments upon which the sales were made were excessive, unjust, unequal, oppressive, and confiscatory when compared with the assessments of other property. The court found all the tax proceedings regular and refused the relief sought, which relief included the ascertainment of the just tax. Many of the findings of the court are wholly unsupported by the evidence; but the main facts are virtually undisputed, and thereunder there are presented for our consideration the following questions: (1) Is injunction a proper remedy under the facts pleaded? (2) Did appellant lose any right to relief by failure to pay into court the amount of tax justly due? (3) Did respondents have the right to introduce oral evidence, either to correct the assessor's return, or to prove what should have appeared from such return, where no return was ever attached to the assessment roll? (4) What is the effect upon the validity of the assessment of the assessor's failure

to make a return, or of his making a faulty return, and, if such lack of return or defect in return renders the assessment invalid, can appellant avail himself of such fact in this action? (5) What is the effect upon the validity of the assessment of the assessor's failure to give the name of the owner in describing real property? (6) What is the effect of the city board of equalization's failure to meet? (7) Is the description of real property, as contained in the assessment books, fatally defective? (8) Are the tax sale certificates void where they recite that the county was a competitive bidder at the sale? (9) Is oral evidence admissible to contradict the terms of such tax sale certificates? (10) Under the evidence, does the county appear to have been a bidder at all; and if not, was there any sale? (11) Does the statute of limitations, prescribing the period of time within which tax deeds may be taken out, apply as against respondent Hughes County? (12) Can the statute of limitations be pleaded by appellant when he seeks equitable relief? (13) In order to redeem from a certificate issued to and held by a county, must appellant pay "subsequent taxes" as well as the tax represented by the sale? (14) Should appellant have been allowed to prove that respondent had compromised taxes, with other taxpayers, and then been permitted to redeem by paying a like proportion of his tax? These questions will be considered in the order above stated.

[1] 1. The relief sought was proper under the facts pleaded. One certainly has the right to enjoin the issuance of a void deed and thus prevent clouds upon the titles to numerous tracts of land, where the assessments are not only void but also inequitable. Plaintiff alleged the inequality and unjustness of the tax and. asked the court to ascertain the just amount which he should pay in order to redeem his property from the sales. The allegations of the complaint were certainly sufficient as against an objection to the introduction of evidence thereunder.

[2.] 2. Under the allegations of the complaint, the amount of tax, which plaintiff should be required to pay, appeared to be uncertain and unknown; hence no tender was necessary. When, under the holdings of the trial court, there came a time during the trial when the amount that plaintiff should pay, in order to be entitled to proceed, became certain, the court might properly

have required such payment before proceeding. It refused to require same, and defendant has not appealed.

[3] 3. Oral evidence is admissible to prove the contents of a written return that has been lost, but not admissible to supply a return or defects in a return as made. The return is an integral part of the assessment, and such assessment must stand or fall as made and returned.

[4.] 4. The courts uniformly hold that statutory provisions regulating assessments, which are enacted for the benefit or protection of the taxpayer, are mandatory, and that an assessor's failure to comply therewith renders the asessment void. This court held in Richardson v. Howard, 23 S. D. 86, 120 N. W. 768, that an assessor's failure to substantially comply with the statute in the form of oath used was a "marked departure" from the provisions of the law and rendered the assessment void.

[5] In the case at bar, it appears that there was no oath "attached" to the asessor's return for the year 1900. There was evidence that an oath was written out and laid in the assessment roll, but no satisfactory evidence as to its contents and no proof that it remained in the book. There was certainly no presumption that it remained there, when it was not "attached" as provided by statute. See definition of "attach" as given by Webster. The evidence as to the oaths that had been torn out was very unsatisfactory, as it failed to show that the oath taken was the one provided for by the law then in force. There are involved herein assessments for several years. In certain years the oath as returned was the identical oath condemned in Richardson v. Howard, supra; in other years the form of oath attached to the real estate return was the one which should have been attached to the personal property return and was therefore a more glaring departure from the requirements of the statute than that found in the Richardson case; in some years no oaths seem to have been attached to real property returns, but "real property" oaths were attached to the personal property returns. With the possible exception of assessments for 1901 and 1903, the assessments were invalid for want of proper oaths.

The Supreme Court of North Dakota held in Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188, and cited a vast number of cases from various states in support thereof, that: "The rule that man-

datory provisions of the statute must be substantially observed by taxing officers, and that the disregard or violation of such provisions is fatal to the tax and defeats the jurisdiction of the taxing officers, is well settled in this state and has become, therefore, practically a rule of property, and hence a rule which this court is bound to uphold until the same has been modified by constitutional legislation. The authorities cited will fully sustain the following propositions: First, that a valid assessment evidenced by an official return is essential to a valid tax, and that fatal defects in the record of an assessment cannot be aided by evidence aliunde; second, a tax deed based on a void assessment is itself void and does not operate to start running the statute of limitations; third, where the statutes require an assessor to authenticate his assessment roll by annexing thereto an affidavit in a prescribed form, it will be fatal to omit such affidavit of authentication."

We are not unmindful of the decisions of the Supreme Court of Wisconsin. In Wis. Cent. Ry. Co. v. Lincoln Co., 67 Wis. 478, 30 N. W. 619, referring to the decision of the same court in Fifield v. Marinette Co., 62 Wis. 532, 22 N. W. 705, the court says that in such case: "It was held that the tax certificates were not necessarily void in equity because of such omission, and that, to entitle the plaintiff to relief, he must show that the tax levied against his property was unequal and unjust, and, as a condition of relief, he must offer to pay the sum as taxes which in justice and equity he ought to pay." A careful reading of the Fifield Case will show that the court did not hold the certificates were not void. The court, in its decision in such case, conceded that the failure to verify the assessment rolls rendered the assessments invalid, but held: "This court has, through a long course of decisions, held that the circuit court could entertain an action in equity to remove a cloud brought upon title to real estate by irregular, and therefore void, proceedings in the assessment and levy of taxes or in the sale of the lands for the nonpayment thereof; but it has also uniformly held that in all such cases, unless it was clearly shown that the illegal tax was also unequal, inequitable, and unjust, relief would only be granted upon the condition that the irregular and illegal tax should be first paid."

The above ruling has been followed by the Supreme Court

of Wisconsin in numerous decisions, as is shown by the opinion in Wis. Cent. Ry. Co. v. Ashland County, 81 Wis. 1, 50 N. W. 937, and we fully concur therewith.

In Farrington v. New Eng. Inv. Co., 1 N. D. 102, 45 N. W. 191, it was said: "Under statutes of the same import as ours, it has been repeatedly held that the fact that no oath was attached to or is returned with the roll would not warrant a court of equity in interfering in any manner with the tax proceedings."

Thus while in Eaton v. Bennett, supra, the Supreme Court of North Dakota holds that a failure to attach proper oath to return renders the assessment invalid, it is held in the Farrington Case that such invalidity is not sufficient ground for equitable relief.

[6] The opinion in the Farrington Case quotes from numerous decisions showing what, besides invalidity in assessment, must appear before one can ask for equitable relief by way of injunction. From these decisions we draw the conclusion that such relief will be granted where the purported assessment is shown to be so inequitable and unjust as to amount to a fraud upon the plaintiff. See, also, Grand Forks v. Frederick, 16 N. D. 118, 112 N. W. 839, 125 Am. St. Rep. 621. The fact that the assessment was invalid being alone insufficient to entitle plaintiff to the relief asked, it being necessary in addition thereto that the assessment be unjust and inequitable, the burden rested upon appellant to prove that such invalid assessment would, if valid, have been inequitable and unjust. As was said by the territorial court in Frost v. Flick, 1 Dak. 131, 46 N. W. 508: "The object of taxation is the raising of a revenue for governmental purposes. If the same end is accomplished, even though the proceedings may be irregular, that would have been reached had all the forms of the law been strictly complied with, equity, regarding the substance rather than form, the end rather than the means, cannot be invoked to undo or restrain from the doing of that which it was the object and purpose of the law to accomplish and relieve a party, on a mere technicality, from the discharge of a legal obligation due the public."

[7] While an assessment roll, invalid for want of a proper oath, should not be received as evidence of the uniformity or equality of the purported valuations of property therein contained,

neither is it any evidence, nor can any presumptions arise therefrom, that the purported valuations therein contained are inequitable; and, when apellant failed to offer any proof that the valuations placed upon his property were inequitable and unjust when compared with the valuations placed upon other property, then, for the purposes of this action, the valuations placed upon his property must be presumed to be equitable and just when so compared with those placed upon other property, and the collection of the tax levied upon such valuation, by sale and deeding of property, should not be restrained until such tax is paid.

[8] While the burden was upon appellant to prove that the purported assessment was unjust and inequitable, yet, such assessment being invalid, appellant had the right to make such proof, and he was not driven to any of the remedies discussed in Bagley Elv. Co. v. Butler, 24 S. D. 429, 123 N. W. 866, and Sioux Falls Sav. Bk. v. Minnehaha Co., 29 S. D. 146, 135 N. W. 689.

5, 6, and 7. What we have said above disposes of the questions 5, 6, and 7 above, because, even if the assessments were invalid for any of the reasons stated, yet appellant could not avail himself of such invalidity in this action without also showing that the tax levied was unjust and inequitable.

[9] .8 and 9. Some of the tax certificates contained recitals showing the county to have been a competitive bidder. Such recitations in a tax deed have been repeatedly held by this court to render the deed void on its face and appelant insists that the same rule should be applied to a certificate. Section 2213, Pol. Code, makes a tax deed prima facia evidence of the truth of all things therein recited and of the regularity of all proceedings prior thereto. Section 2199, Pol. Code, though not very clear in its wording, may perhaps make a certificate prima facie evidence of the regularity of all prior proceedings. We are of the opinion that the office of the certificate is merely to preserve evidence of the purchaser's interest and rights; that, if it contains all that section 2199, supra, provides, that it should contain, then it is prima facie evidence of the regularity of "the proceedings" pertaining to such sale; that, if it contains recitations other than those prescribed by such section and such recitations would tend to show some irregularity in proceedings, the effect of such recitation would simply be to destroy the certificate as evidence of the regularity of such

particular proceeding. We think, however, that in no case is the certificate more than prima facie evidence, and that the truth may be shown in dispute thereof, as the deed rests upon the sale and not upon the certificates thereof. The only effect of the superfluous recitation, that the county was a competitive bidder, was to require respondent to prove the facts by evidence aliunde the certificate, and if such facts showed a valid sale, appellant could not complain. It follows that evidence was admissible to contradict the superfluous statements contained in such certificates.

[10] 10. The evidence offered by respondents tended to show that. for the pieces of land described in the several certificates, there were no bidders other than the county; but said evidence also showed that neither the treasurer nor any other person made any public bid on behalf of the county. The procedure apparently followed was for the property to be offered for sale, and, when there were no bidders, then for the treasurer to issue a certificate to the county without any formal bid therefor on behalf of the county. Appellant insists that this evidence shows no sale whatsoever. There is no provision of statute requiring certificate to be issued to the county in case there are no bids, but the statute leaves it discretionary with the treasurer whether or not he shall bid the property in for the county. Section 2203, Pol. Code. The statute also provides (section 2201, Pol. Code) for a private sale, "after the tax sale has been closed and after the treasurer has made his return thereto to the county auditor," of all lands unsold for want of bidders. The treasurer does not have to make his return for nearly a month after the date fixed for the public sale. An examination of the statute reveals the fact that the rights of a purchaser at private sale are very different from those acquired by one who takes an assignment of a certificate held by the county. In order for those present at the public tax sale to know what property remains for private sale, an open bid is essential. We can see no reason why such a bid is not as essential in a sale to the county as to an individual. It might well happen that a party present at a tax sale, where no bids were being made by the public or by the county, would refrain from bidding, hoping thereby to get a chance to bid in property at private sale; but, if the county should make bids, such a party would then know that there might be no property to be sold at private sale and that

he must bid at the public sale if he wished to make any purchase
freed from the conditions attaching to a certificate purchased
from the county. Furthermore, the owner of property is entitled
to know whether his property has been bid in at the sale, and to
know this at the time of the sale. The sales in question were in
effect "secret sales" and as such voidable, if not absolutely void.
Blackwell on Tax Titles, § 487. But appellant is not in a position
to urge the invalidity of such sales for the reasons stated in the
discussion of question 4.

11 and 12. Does chapter 10, Laws 1909, apply to certificate
of tax sale held by a county? If so, can plaintiff plead it and re-
ly upon it in this action? Chapter 10, Laws 1909, provides a lim-
itation of six years from date of certificate within which proceed-
ings to procure tax deeds must be commenced. Certain of the
certificates would be barred if the above law is held to apply. It
must be borne in mind that, when a purchase is made at tax sale
by any other than the county, the tax itself is paid, a tax receipt
issues, the state and its several subdivisions cease to have any in-
terest in the lien that is now vested in the purchaser. Such is
also the case when a certificate held by the county is assigned, the
tax is paid, the interest of the sovereign power ceases. When a
purchase is made by the county, it is but a method of enforcing
the payment of the tax, which tax remains unpaid until redemp-
tion is made, the certificate assigned, or the county takes deed; in
fact, under our present law the interest of the public (the state
and its subdivisions) in the tax itself remains until the land is
sold by the county, even where the county takes tax deed. The
county acts not only for itself in the furtherance of a public duty,
but it is the agent or trustee of the state, as well as of the polit-
ical divisions lesser than itself, and, as such agent or trustee, it is
charged with a duty public in nature and of the most vital im-
port, to wit, the collection of those revenues that are the very life
blood of organized society.

[11] That being true, it follows that, unless specifically pro-
vided by the statute itself, no statute of limitations can apply to
the county and prevent its performing such public duty. In uphold-
ing the above proposition the Supreme Court of Ohio, in the case
of Wasteny v. Schott, Treas.. 58 Ohio St. 410, 51 N. E. 34 said:
"Taxation is a recognized, constitutional, and lawful means of

raising such revenues for most, if not all, public needs; and the courts will take notice that general taxes levied by the state directly, or through local agencies to which it has delegated that power, constitute a source of revenue for use in the due performance of the functions of the state government. Whether voluntarily paid or collected by suit, they go partly to the general funds of the state, for its disbursement in the administration of public affairs, and are in part disbursed, in the due course of local administration, by officers exercising the delegated powers of the state, deemed necessary and proper for that purpose. In the latter case, as well as in the former, the fund belongs to the state's revenues, and the disbursements is for the public benefit, although local advantages may also result. Through county, township, municipal, and other organizations, they are paid out in the administration of public justice, the maintenance of the public order and security, the support of the public schools, and other purposes of a public nature pertaining to the state government."

The following is the rule as applied to municipal corporations: "As respects all public rights, or as respects property held for public use, upon trusts, municipal corporations are not within the operation of the statuate of limitations." Logan County v. City of Lincoln, 81 Ill. 156; Greenwood v. Town of La Salle, 137 Ill. 225, 26 N. E. 1089. In the latter case the court, holding the statute did not apply, said: "A town under our township organization system, is but a civil division of a county and exists as a municipal corporation merely for the purpose of carrying on the state government. It can only levy and collect taxes for the purpose of carrying on that subdivision of such government. It must be admitted that town taxes may be levied for the purposes in which the public generally are directly interested, such as 'constructing or repairing roads, bridges, or causeways' within the town. Section 40, art. 4, c. 139, Rev. St.; City of Alton v. Transportation Co., 12 Ill. 60 [52 Am. Dec. 479]. Other improvements may also be lawfully paid for out of a town tax, in which the public at large have as much interest as those residing within the boundaries of the township. We entertain no doubt that the right here sought to be enforced is of such a public nature that no statute of limitations could be interposed against it."

In Hagerman v. Territory, 11 N. M. ·156, 66 Pac. 526, the court says: "Under our system of government a county is a civil subdivision of the territory and exists as a municipal corporation merely for the purpose of carrying on the territorial government; and it is well settled that the plea of the statute of limitations is no defense to those actions by such corporation involving public rights, such as taxation, unless the statute expressly so provides. Dill. Mun. Corp. § 533; Piatt County v. Goodell, 97 Ill. 92; City of Memphis v. Looney, 9 Baxt. [Tenn.] 1?0; Magee v. Com., 46 Pa. 358; Greenwood v. Town of La Salle, 137 Ill. 228, 26 N. E. 1089; Madison County v. Bartlett, 1 Scam. [Ill.] 70; People v. Town of Oran, 121 Ill. 655, 13 N. E. 726; 1 Wood, Lim. Act. (2 Ed.) 117, 118; 13 Am. & Eng. Enc. Law, 714; City and County of San Francisco v. Jones (C. C.) 20 Fed. 190." See, also 19 Am. & Eng. Ency. Law, 191; 25 Cyc. 1007; 2 Desty on Taxation, 1056.

[12] 13. Must the owner of the land pay the "subsequent tax" in order to redeem from a sale made to the county where the tax certificate is still held by the county? The question thus presented is one purely of statutory construction. It is not for us to say what, in our opinion, the law should be, but to try and de· termine what the lawmakers have declared in the statutes relating to tax sales, redemption, etc. The statutes were formerly chapter 28, Laws 1897, and are now a part of the Rev. Pol. Code 1903, except that section 124 of said chapter 28 was afterwards amended (Sec. 1, c. 46, Laws 1901) by adding thereto two provisos; such section as amended being now section 220?, Rev. Pol. Code. The following are the sections of the Rev. Pol. Code before us for consideration:

"Sec. 2203. The county treasurer of each county within this state is hereby authorized at all tax sales made under the laws of this state, in case there are no other bidders offering the amount due, to bid off all or any real estate offered at said sale for the amount of taxes, penalty, interest and costs due and unpaid thereon, in the name of the county in which the sale takes place, said county acquiring all the rights, both legal and equitable, that any purchaser could acquire by reason of said purchase: Provided, that whenever any county in this state shall acquire an interest in real estate, or any rights with respect thereto, by reason

of the same having been bid off in the name of the county as herein provided, such real estate shall not be again advertised and sold for delinquent taxes so long as the county retains its interest in and rights to such real estate gained by reason of the same having been so bid off: And, provided, further, that all taxes subsequently accruing against said real estate, or that were unpaid at the time of such sale and lien thereon, but not included in such bid, shall be considered as 'subsequent tax,' and before the county can make an assignment of such interest in and rights to said real estate gained by reason of the same having been so bid off, or before an assignment of the certificate of said sale is made, all such taxes must be paid in full, including the amount for which such land was so bid off, unless a compromise thereof is made as permitted by law, in which case the amount at which such compromise is made must be paid.

"Sec. 2204. Whenever the county treasurer of any county shall bid off any real estate in the name of the county he shall make out a certificate of purchase to said county in the same manner as required if sale had been made to any other person, which certificate shall be retained by the treasurer as provided by law; but no tax receipt shall be issued and no amount due the state or any other fund or costs or treasurer's commission shall be paid by the county until redemption has been made from such sale or the time of redemption has expired, or until the interest of the county has been assigned. The certificate or certificates so issued to the county shall bear interest at the rate of twelve per cent per annum.

"Sec. 2205. In case the owner of said real estate, or any person having any legal or equitable interest therein, is desirous of redeeming said real estate from said sale to the county, he shall have the right to do so at any time before tax deed shall be issued, by paying the amount of taxes with penalty and interest up to the date of redemption, and the costs of advertising and selling the same; and upon the payment thereof the said treasurer is hereby required to give the person so redeeming a certificate of redemption, and he shall at the same time issue a tax receipt and duplicate for said taxes, penalty, interest and costs, which shall be entered upon his cash book as other tax receipts. He shall also mark upon the tax duplicate in his office opposite the descrip-

tion of said real estate the word 'redeemed,' with date, and name of person by whom redeemed.

"Sec. 2206.- If any person is desirous of purchasing the interest of said county in said real estate, acquired by reason of said county treasurer buying the same for the county, he may do so by paying to the said treasurer the amount of the taxes, penalty, interest and costs of sale and transfer up to the date he so pays, and thereupon the said treasurer shall issue a tax receipt and duplicate as provided in the preceeding section and shall assign and deliver to said purchaser the certificate of purchase held by said county for said real estate, which assignment and transfer shall convey unto said purchaser all rights of said county, both legal and equitable, in and to said real estate as much so as if he had been the original purchaser at said tax sale.

"Sec. 2207.   All pieces or parcels of real property bid in·by the county under the provisions of this article and not redeemed or assigned within two years from the date of sale, shall, upon the treasurer giving the notice required by law, become absolute property of the county, and upon payment by said county of the taxes due the various funds upon said sale, the treasurer shall issue a tax deed therefor to the county in the same manner as to individual purchasers, and the county may sell and convey said real estate in such manner as is now or may hereafter be provided by law for selling of real estate, and the proceeds of such sale shall be placed to the credit of the county general fund.

"Sec. 2208. The owner or occupant of any land sold for taxes, or any other person, may redeem the same at any time within two years after the date of such sale, or at any time before the execution of a deed of conveyance thereof by the county treasurer by paying the treasurer, for the use of the purchaser, his heirs or assigns, the sum mentioned in the certificate, and interest thereon at the rate at which the land was sold, from the date of purchase, together with all other taxes subsequently paid, whether for any year or years previous or subsequent to said sale, and interest thereon at the same rate from the date of such payment; and the treasurer shall enter a memorandum of the redemption in the list of sales, and give a receipt therefor to the person redeeming the same, and file a duplicate of the same with the county auditor, as in

other cases, and hold the money paid to the order of the purchaser, his agent or attorney. * * *

"Sec. 2209. Any person claiming a part of any land sold for taxes whether the part be divided or undivided, may redeem the same on paying the purchase money on such portion or proportion as he may claim, together with the interest and subsequent taxes, and a statement of the portion redeemed shall be indorsed on the receipt or certificate of redemption and entered up in the treasurer's tax sale record."

[13] This court must presume that the Legislature, when it adopted the 1903 Code and thus re-enacted this law, intended that such law, except as amended, should be construed exactly as it would have been construed prior to such re-enactment, so that the only thing for our determination is what would be a proper construction of the 1897 law as amended in 1901. It will be apparent to any one that under the law as it read in 1897, in case of a sale to the county, the county, by virtue of such sale, was not entitled to annex thereto any subsequent tax; that all taxes, other than the one upon which the sale was made, stood against the land, just as it would in case the sale had been made to a private individual and such private individual had not seen fit to pay other taxes as subsequent to his purchase. That being the situation, there was nothing to prevent future sales of the same land to persons other than the county. Neither was there anything to prevent a taxpayer paying subsequent taxes without redeeming the tax certificate. Neither could the county, upon assigning its certificate, require that the assignee pay, as subsequent thereto, the other taxes outstanding. It follows that under the 1897 law the owner was clearly entitled to redeem from the tax sale by paying the amount represented by the sale, to-wit, the tax for one year and the interest, penalty, and costs, and he was not obliged to pay any attention to any other tax. It is appellant's contention that, inasmuch as section 2205 reads as it did in the 1897 law, the rights of one, seeking to redeem from a certificate held by the county, are left the same as under the 1897 law. Respondents contend, that the phrase "shall be considered as 'subsequent tax,'" as used in the second proviso of section 2203, affects the construction to be given to all these sections, and that under section 2205, wherin it is provided that one seeking to redeem from a county can do so by

"paying the amount of taxes, * * *" the term "taxes" must be construed as including the "subsequent taxes" mentioned in section 2203.

[14] In construing statutes governing tax proceedings, as in construing all other statutes, the legislative intent is the vital and controlling factor. A construction which will render effective and operative the general purpose existing in the legislative mind should be adopted rather than one which necessarily defeats such purpose. In an attempt to ascertain the legislative intent, the entire language and general purpose of the enactment relating to a particular subject-matter must be taken and considered together. Express words are not always required, where the purpose and intendment of an enactment as a whole are apparent.

The act of 1901 ingrafted a new policy on the law of taxation in adding the two provisos now found in section 2203. Under the second proviso, the assignee of the tax sale certificate is required to pay all "subsequent taxes." Section 2203 declares that the county, as a purchaser, acquires "all the rights, both legal and equitable that any purchaser could acquire by reason of said purchase." Section 2206 provides that any person desirous of purchasing the interest of the county in a tax sale certificate may do so by paying to the treasurer "the amount of the taxes, penalty, interest and costs of the sale and transfer up to the date he so pays," for which the treasurer shall issue to him a tax receipt and duplicate as required by section 2205 and shall assign and deliver him the county's certificate of sale "which assignment and transfer shall convey unto said purchaser all rights of said county, both legal and equitable, * * * as much so as if he had been the original purchaser at said tax sale." Certainly the "taxes, penalty, interest," required by section 2206, to be paid by an assignee of the tax certificate, include the same items as the "taxes with penalty and interest" mentioned in section 2205; and no one would contend but that, since the enactment of the second proviso in section 2203, the amount necessary to procure an assignment under section 2206 must be held to include those taxes specified and defined in said second proviso of section 2203, as "subsequent taxes;" therefore the word "taxes," as used in section 2205, must be construed to include "subsequent taxes" as defined in section 2203. In view of the plain legislative intent and the results which would

follow the construction contended for by appellant, we should so hold. The county cannot assign certificates of sale except upon payment of all "subsequent taxes." It is apparent that the legislative intent was to invest the assignee, who purchased a tax sale certificate from the county, with all the rights, in case of redemption from such sale, which would be acquired by one who purchased at tax sale or who took an assignment from a person who purchased at such sale. The owner who seeks to redeem from a purchaser at tax sale must pay the sum mentioned in the certificate and interest thereon from the date of purchase, together with all taxes subsequently paid, whether for any year or years previous or subsequent to said sale, and interest thereon from the day of such payment; yet if appellant is right in this construction of section 2205, while the assignee of a tax certificate issued to a county is required to pay all unpaid and delinquent taxes not included in the certificate, as a condition precedent to becoming such assignee, he can never recover a dollar of such subsequent taxes from the owner of the land when such owner redeems. Section 2203 contains the only provisions for redemption from sales to the county and cannot be given one interpretation when applied to an assignee of the county and another when applied to the county itself. The word "taxes," as used in this section, should be held to include "subsequent taxes," as defined by the proviso in section 2203.

It will be seen that in section 2209, formerly section 130 of the 1897 law, the term "subsequent taxes" was used. This section is of value to us at this time as indicating what was understood by the term "subsequent tax" when used in the amendment of 1901 to section 124 of the 1897 law, now section 2203. It seems clear that such term, as used in the 1897 law, had reference to taxes paid subsequent to the sale, and that in using such term in such amendment of 1901, the Legislature intended that all taxes included in such term should be considered for all purposes as though they had been paid by the county and therefore to be treated the same as taxes paid by an individual subsequent to a sale to him. Section 2209 clearly included redemptions of all kinds, both from sales to individuals and from sales to the county. If appellant's contention is sound, we have this anomalous situa-

tion:   The owner of land who claimed the whole thereof
and asked to redeem the whole thereof could, under section 2205,
redeem without paying taxes on other than the one upon which
the sale rested; but, if he claimed to be the owner of half interest
in the land, then under the express provisions of section 2209,
he could not redeem without paying one-half the tax including
subsequent taxes..

If appellant's contention is sound, there would also be the fol-
lowing anomalous situation in the case of a tax sale to the county
where there had afterwards accrued several years' unpaid
taxes for years subsequent to that upon which the sale
is made: These "subsequent taxes" would stand unpaid and
be liens against the land; if the owner redeemed from the sale,
these later taxes would be enforceable and the different political
divisions would eventually get their share thereof; if the tax certi-
ficate was assigned then, under the provisions of section 2203, the
county would get in all the "subsequent taxes," and the several
political divisions would get their share of all taxes that had been
assessed and levied, including the taxes for which sale was made
and all the "subsequent taxes;" but, if no redemption and no as-
signment were made, the county could allow enough time to elapse
so that the accumulated taxes, which under the express provisions
of the statute could stand as liens against the land, would be-
come so large in amount that no one would redeem the land or
take an assignment of the county's interest, and the county could
then take a tax deed cutting off all these later taxes, thus prevent-
ing their ever being enforced, and, regardless of the fact that the
land might be valuable enough to pay nearly or quite all these
later taxes as well as the tax upon which the sale was made, could
under section 2207 be required to pay to the other political divi-
sions only their part of the tax upon which the sale was made.
The effect of the second proviso in section 2203 is to cause all
other taxes, except the one upon which a sale is made, to be
treated as having been paid by the county as "subsequent taxes;"
and no redemption can be made from such sale without the pay-
ment of such "subsequent taxes."

[15] 14.   Was appellant entitled to offer evidence to prove
that the county commissioners had compromised the taxes as
levied against the property of some other taxpayers? Appellant

alleged that the taxes of others similarly situated to himself, had been compromised by the county commissioners, upon which allegation he based a claim to relief from payment of the full amount of his taxes. The mere fact that the county commissioners may have compromised other taxes neither shows that such compromises were proper nor that compromises should be made on appellant's taxes. The only power given to county commissioners to abate or compromise taxes is found in the following sections of the Political Code:

"Sec. 2222. Whenever it appears to the board of county commissioners that the full amounts of any taxes extended and charged against any platted real property in any township, town, city or village cannot be realized by sale of the property or otherwise, the said board shall have the power to make such settlement or compromise of any taxes for any year or years as in their judgment shall be for the best interests of the county; and in such settlement or compromise the taxes abated shall be apportioned pro rata among the several funds represented therein.

"Sec. 2223. Whenever taxes remain unpaid on any real estate, and the property shall have been offered for sale as required by the statutes two successive years and received no purchase: on account of the depreciation of the value of said property or otherwise, the county commissioners of the county in which the property is situated shall have the power to compromise with the owners thereof by abating a portion of the delinquent taxes and penalty on said property.

"Sec. 2224. The board of county commissioners of the several counties of the State of South Dakota are hereby empowered. as a means of relief, to rebate in whole or in part the taxes of any person whose buildings, stock, or other property has been destroyed by fire, cyclone or other unavoidable casualty: Provided the loss for which said rebate is allowed shall be such only as is not covered by insurance."

There is no pretext that appellant has any right to an abatement of his taxes under the provisions of these sections. If the county commissioners have abated or compromised the taxes of other tax payers, when not authorized so to do by one of these sections, the proper remedy for the wrong done appellant and other taxpayers whose taxes have not been so abated lies not in

seeking the sanction of the courts for such unlawful abatement but to seek to have such county commissioners pay into the treasury of the county any money lost thereto by such wrongdoing. If appellant's prayer were granted and his taxes were abated or compromised, a further wrong would be done to those who have paid their taxes in full. As was said by this court in Savings Bank v. Minnehaha County, 29 S. D. 147, 135 N. W. 689: "To grant respondents' (appellant's) prayer would be an attempt to right one wrong by committing another, the relieving of respondents (appellant) from a share of the public burdens which by right they (he) should bear."

[16-17] In conclusion we would state: The tax sales were irregular, but appellant has not shown himself injured thereby except to the amount of the costs of sale. The trial court should, in its conclusions and decree, have provided for a reasonable time within which appellant might redeem from the several sales. In failure of such redemption the respondent county should be allowed to take out tax deeds. The decree should be modified to conform to the foregoing. As modified it should be affirmed.

POLLEY, J., dissenting.