STEWART, Respondent, v. RAPID CITY, Appellant.

(205 N. W. 654.)

(File No. 5529. Opinion filed October 2, 1925.)

1. **Municipal Corporations—Damages—Statute Requiring Presentation of Claims Held Not to Apply to Tort Actions.**

   Rev. Code 1919, Sec. 6338, prohibiting suit against municipal corporation to enforce collection of claim without first presenting claim, and having it acted on by governing body, applies only to accounts, claims, or demands dealt with by section 6337, which does not apply to claim for damages in tort.

2. **Statutes—Presumptions—Re-enactment of Statute Without Change After Construction by Supreme Court Causes Presumption that Legislature Intended that it Should Be Likewise Construed Subsequent to Re-enactment.**

After Rev. Code 1919, Secs. 6337 and 6338, requiring presentation of claims against municipal corporation, was construed by Supreme Court re-enactment thereof by Legislature gives rise to presumption that Legislature was familiar with prior judicial interpretation, and intended that statutes should be likewise construed subsequent to re-enactment.

3. Municipal Corporations—Sewers—Negligence—Trial—Minutes of Council Held Admissible to Show Construction of Sewer Bulkhead Causing Flooding of Land.

In action by riparian landowner against city for flooding of premises, where it did not appear that city sewer system had any outlet into stream other than one in question, and did appear that there was, and had been for many years, adjacent and parallel to it, piling or bulkhead, which plaintiff claimed caused overflow of property, admitting in evidence, and refusing to strike out minutes of city council showing that city auditor was authorized to have sewer outlet properly protected and payment of bill for material and labor at mouth of sewer, was proper.

4. Municipal Corporations—Trial—Evidence—Exclusion of Testimony as to General Damages from Flood Held Proper.

In action by riparian property owner against city for obstructing stream and causing flooding of property, although defendant was entitled to show that flood in question was unprecedented, excluding testimony as to general damages caused by flood in question to other property in city was proper.

5. Municipal Corporations — Evidence — Sewers—Evidence Held to Justify Conclusion City Built Sewer Bulkhead Causing Overflow of Land.

In action by riparian landowner against city for causing overflow of land, evidence held to justify conclusion that city built sewer bulkhead which obstructed stream and caused overflow of plaintiff's land.

6. Municipal Corporations—Proximate Cause—Negligence—Trial— Issue as to Negligence Causing Flooding of Land Held for Jury.

In action by riparian landowner against city for causing flooding of land and damage to improvements, evidence as to nature of stream and character of flood held to make decision of whether bulkhead protecting sewer outlet which was alleged to have caused the flooding was negligently constructed, whether damage was caused solely by unusual flood, whether plaintiff was guilty of contributory negligence in locating improvements and assuming risk, and whether she used diligence to prevent or minimize damage which could have been done at moderate expense, questions for jury.

7. **Appeal and Error—Instructions—Instructions as to Liability of City for Causing Flooding of Riparian Land Requiring Plaintiff to Show Negligence in Construction of Bulkhead Protecting Sewer Outlet Held More Favorable to Defendant Than It Was Entitled To.**

In action by riparian property owner against city for flooding of land, instructions requiring plaintiff to show negligence in construction of bulkhead protecting sewer outlet, which was alleged to have caused flooding, as condition precedent to recovery, held more favorable for defendant than it was entitled to receive.

8. **Waters and Water Courses—Negligence—Upper Proprietor May Not Deflect Water to Injury of Lower Proprietor.**

Upper proprietor has no right to erect obstruction in stream, deflecting water to injury of lower proprietor, whether obstruction is negligently constructed or not.

9. **Municipal Corporations—Evidence—Evidence Held to Support Recovery for Flooding Premises.**

In action by riparian landowner against city for causing flooding of premises by obstructing stream to protect sewer outlet, evidence held to support verdict for plaintiff.

10. **Trial—Instructions—Refusal of Requested Instructions Covered by Other Instructions Held Not Error.**

In action by riparian landowner against city for causing flooding of premises by placing obstruction in stream to protect sewer outlet, refusal of instruction that, if plaintiff might, by use of ordinary care and moderate expense, prevent damages, and did not do so, such negligence would bar recovery, covered by other instructions, was not error.

11. **Waters and Water Courses—Instructions—Vis Major—Instructions on Liability for Flood Held Properly Refused.**

In action by riparian landowner against city for causing flooding of premises, refusal of instruction that, if flood was caused by extraordinary freshet against which reasonable care could not guard, and if damage was due to unusual rainfall, defendant would not be liable, in view of fact that flood in question, although more than usual, was not without precedent, was not error.

12. **Waters and Water Courses—Negligence—Person Required to Anticipate Floods.**

Person obstructing natural water course is not bound to anticipate unprecedented floods of which usual course of nature affords no premonition, but, if flood causing damages in question might be expected to occur at irregular intervals, he is not

thereby exempt from liability for damage caused by his obstruction, which damage would not have occurred but for said flood, whether such flood is ordinary or extraordinary.

13.   **Trial—Iustructions—Appeal and Error—Giving Instruction Relating to Negligence of Defendant in Obstructing Stream Causing Overflow of Plaintiff's Premises Held Error.**

In action by riparian property owner against city for causing flooding of premises by obstructing stream, instruction that cause of action depended on what is known as negligence, and it was for jury to determine whether either of parties, or both of them, was negligent, was too favorable to defendant, as it rested defendant's liability solely on negligence, and was not erroneous as eliminating affirmative defense of unusual and extraordinary flood, which was covered by other instructions.

14.   **Trial—Instructions—Where Fact that City Constructed Bulkhead in Stream Was Admitted, Assuming Such Fact in Instruction Was Not Error.**

In action by riparian landowner against city for causing flooding of premises by obstructing stream with bulkhead protecting sewer outlet, where fact that city constructed bulkhead was admitted, instruction that jury should determine whether city was negligent in placing bulkhead in stream was not error as assuming fact that city constructed bulkhead.

Appeal from Circuit Court, Pennington County; Hon. James McNenny, Judge.

Action by Abbie Stewart against the City of Rapid City, for damages from overflow of premises. Judgment for plaintiff, and defendant appeals. Affirmed.

*George Williams,* of Rapid City, for Appellant.

*Bangs & Wood,* and *Turner M. Rudesill,* all of Rapid City, for Respondent.

(1)  To point one of the opinion, Appellant cited: Haley & Lang Co. v. City of Huron, 153 N. W. 892.

(6)  To point six, Appellant cited: Walters v. Dancey, 23 S. D. 482; McKeever v. Mining Co., 10 S. D. 599; Knapp v. Sioux Falls Natl. Bank, 5 Dak. 387; Pirie v. Gillett, 2 N. D. 255, 50 N. W. 710; Elliott v. Chicago, M. & St. P. R. Co., 150 U. S. 245; Dakota F. & M. Ins. Co., 1 S. D. 462; Reynolds v. Great Northern R. Co., 27 N. D. 268, 145 N. W. 1053.

Respondent cited: Kendrick v. Towle (Mich.), 27 N. W. 567; Brous v. Wabash Ry. Co. (Ia.), 142 N. W. 416; Alpern v.

Churchill (Mich.), 19 N. W. 549; Knight v. Albermarle Ry. Co. (N. C.), 15 S. E. 929; Salmon v. Ry. Co., 38 N. J. Law 5; North. Bend Lbr. Co. v. Seattle (Wash.), 199 Pac. 988, 19 A. L. R. 415; Martin v. North Star Iron Works (Minn.), 18 N. W. 109; Schell v. Second National Bank, 14 Minn. 43; Yik Hon v. Spring Valley Water Works (Cal.), 4 Pac. 666; Waters Pierce Oil Co. v. King (Tex.), 24 S. W. 700.

(8)   To point eight, Respondent cited: Beauchamp v. Taylor, 132 Mo. App. 92, 111 S. W. 609; Dunn v. Chicago, etc.. Ry. Co., 114 N. E. 888; Hartshorn v. Chaddock (N. Y.), 31 N. E. 997; McKee v. Delaware Co., 125 N. Y. 353, 26 N. E. 305; Skinner v. Great N. Ry. Co., 151 N. W. 968; Parker v. City of Atchison (Kan.), 48 Pac. 631.

(11)   To point eleven, Appellant cited: Haley & Lang Co. v. City of Huron (S. D.), 153 N. W. 892; Wm. Tackaberry Co. v. Simmons Warehouse Co. (Ia.), 152 N. W. 779; Taubert v. City of St. Paul (Minn.), 71 N. W. 664; Abbott on Municipal Corporations, Vol. 3, Sec. 959.

Respondent cited: Chicago, etc., Ry. Co. v. Morton (Okla.), 167 Pac. 917; Pahlka v. Chicago Ry. Co., 161 Pac. 544; Licking Rolling Mill Co. v. Fisher, 7 Ky. Law Rep. 587; Ulrick v. Dakota L. & T. Co., 3 S. D. 44, 51 N. W. 1023; Chicago, etc., Ry. Co. v. Bahr, 188 Pac. 1058; Mo., etc., Ry. Co. v. Steames, 185 S. W. 646; Rogers v. Oregon Ry. Co. (Idaho), 156 Pac. 98.

CAMPBELL, J.   Plaintiff herein complained, in substance: That in 1912 she purchased lots 17 to 26, and 29 to 32, inclusive, in block 50 of the town site of defendant city, which lots were adjacent to, and on the north bank of, a stream known as Rapid creek, which flows through said town site in a general westerly to easterly direction.   That said lots had an average elevation of 6 to 10 feet above the bed of the stream, were well adapted for residence purposes and that plaintiff erected thereon a dwelling house and other improvements.   That in the year 1907 defendant city established a sewage system discharging into Rapid creek, the outlet thereof being at the intersection of First and St. Louis streets, emptying into said stream on the south bank thereof, and and a short distance upstream from plaintiffs property, situated on the north bank thereof, and that the said city, for

the purpose of protecting said sewer outlet from damage and injury from floods and freshets, caused to be extended into the channel and flood water channel of said stream a line or series of heavy piling, with planking nailed thereon, above and parallel to said sewer outlet, projecting out into said stream, constituting in effect a bulkhead or breakwater whereby the flow of the flood water of said stream was diverted toward the northerly bank of said stream. That in the shelter of said bulkhead, by reason of the existence thereof, and down stream therefrom, the former flood water channel of said stream became over grown with trees, brush, and weeds, with the result that in the month of May, 1920, the waters of the stream, swollen by melting snows and spring rains over the watershed drained thereby, were by said bulkhead or obstruction, and by the weeds, trees, and brush grown up in the shelter thereof, diverted from their former and natural course, and thrown over and against the property of the plaintiff, whereby the surface of plaintiff's land in considerable part was washed away to the depth of 6 to 10 feet, plaintiff's house undermined, and a new channel of said stream formed through plaintiff's land, necessitating the hasty removal of the improvements thereon to adjoining land, with considerable damage thereto and the washing away of some improvements, all to plaintiff's injury $7,000.

The defendant city,, by its answer, denied that the natural flow of the waters of said stream was at any time interfered with by any artificial obstruction, admitted the construction of the sewer with its outlet into said stream at First and St. Louis streets, but did not admit the construction of any bulkhead or piling, and admitted that the swollen waters of the stream. in May, 1920, washed away plaintiff's property substantially as she alleged. Defendant further pleaded that during 34 years prior to May, 1920, the waters of said stream continually flowed through the same channel, and by ordinary and natural erosion took away a portion of said block 50, and had already cut into said block a distance of 10 to 75 feet when plaintiff purchased the same in 1912, and plaintiff knew that said property was slowly but inevitably being destroyed by the waters of said stream by ordinary and natural causes, but nevertheless built her improvements dangerously close to said stream, with knowledge that they must in

course of time become undermined by ordinary and natural erosion, and' that plaintiff, knowing all said facts, did negligently and carelessly omit to do or perform any act, during all the time she owned said property, tending to protect or preserve the bank of said stream upon her property from said constant and natural impairment, although she could have so done at moderate expense; further that the spring freshet of May, 1920, was occasioned by heavy, unusual, and extraordinary storms, and that the injury suffered by plaintiff was caused by her own negligence, and by said unusual and extraordinary freshet and flood, without any fault of said defendant, its officers or agents; further that the action could not be maintained, for that plaintiff had never, prior to the institution of the action, or at any other time, presented her said claim for damage to the governing body of defendant city as required by section 6338, Rev. Code 1919.

Upon these pleadings issue was joined, and the cause was tried. At the conclusion of all the testimony, defendant city moved for a directed verdict, which motion was denied, and the jury found for plaintiff, assessing her damages in the sum of $3,175.61, principal and interest, whereupon defendant city moved for judgment notwithstanding the verdict, which motion was denied, and judgment entered in favor of plaintiff upon the jury's verdict, from which judgment the city now appeals.

The contentions of appellant in support of which it has assigned error may be stated substantially as follows:

First, that a compliance with the provisions of section 6338, Rev. Code 1919, is a necessary condition precedent to the maintenance of the action.

Second, that the court erred in receiving and refusing to strike certain evidence going to the question of whether or not the city constructed or authorized the piling or bulk head.

Third, that the court erred in refusing to permit appellant to show what damage the freshet of 1920 caused generally through the city.

Fourth, that the evidence does not support the verdict in the following particulars: (a) That it fails to show that appellant constructed the bulkhead or piling; (b) that it fails to show said bulkhead or piling was constructed in a wrongful, negligent, or unskillful manner; (c) that it conclusively appears that the 1920

flood was not in any wise affected by the bulkhead or piling; (d) that it conclusively appears that respondent's damage was caused solely by the unusual and extraordinary freshet of 1920 and not by any negligence of appellant; (e) that respondent was contributorily negligent in erecting her improvements where she did and assumed the risk of so doing; and (f) that it clearly appears that respondent, at an expense of $375, or thereabouts, could have completely prevented the damage, but used no effort or diligence so to do.

Fifth, that the court erred in the giving and refusing of certain instructions.

[1] Turning to the first contention of appellant, sections 6337 and 6338, Rev. Code 1919, which had their origin as sections 1 and 2, respectively, of chapter 128, Laws 1909, read as follows:

"Sec. 6337. *Claim Presented.* Before any account, claim or demand against any municipal corporation for any property or services for which such corporation is liable shall be allowed, the person in whose favor such account, claim or demand shall be, either by himself or agent, shall reduce the same to writing and shall verify the same to the effect that such account, claim or demand is just and true; that the money therein charged was actually paid for the purposes therein stated; that the property therein charged for was actually delivered or used for the purposes therein stated and was of the value therein charged; that the services therein charged for were actually rendered and of the value as charged; or, in case such services were official, for which fees are prescribed by law, that the fees or amounts charged therefor are such as are allowed by law; and that no part of such account, claim or demand has been paid.

"Sec. 6338. *No Suit Before Claim Presented.* No suit shall be instituted against any municipal corporation to enforce the collection of a claim against it, unless such claim shall first have been presented to and acted upon by the governing body thereof in the manner prescribed by the preceding section; provided that in case the governing body of any municipal corporation, having had such claim before it at a regular meeting, shall fail or neglect to act upon such claim, it shall then be lawful for the owner of such claim, or his legal representatives, to bring suit in any competent court, as provided by law, to enforce the collection thereof; and

provided, further, that this section shall not apply to cases where purely equitable relief is sought."

[2] It is conceded that respondent did not at any time present to the governing body of appellant city any claim or demand in writing for payment of the damages here sought to be recovered. The contention of appellant on this point, however, is without merit. This court has previously held that section 6338, Code 1919, has reference only to the accounts claims, or demands dealt with by section 6337, Code 1919, and that the same does not apply to a claim for damages in tort. Haley & Lang Co. v. City of Huron, 36 S. D. 6, 153 N. W. 891. We are convinced of the soundness of the rule laid down in the Haley & Lang Case. Furthermore, the decision in that case was handed down July 24, 1915, since which time the Legislature has re-enacted the statutory provisions without change in this particular in the Rev. Code of 1919, whereby we are entitled to indulge the presumption, however violent it may be as a matter of fact, that the Legislature at the time of re-enactment was familiar with the prior judicial interpretation, and intended that the law should be likewise construed subsequent to re-enactment. See Brink v. Dann, 33 S. D. 81, 144 N. W. 734.

[3] Appellant's second contention is that the court erred in receiving in evidence and refusing to strike out the minutes of the city council of appellant city under date of October 1, 1907, which showed, among other things, that "the auditor was authorized to have the sewer outlet properly protected"; also minutes of the city council under date of November 18, 1907, showing the payment of a bill for 13 pile points and the payment of bills of John Wight, and three others, each for "four days' labor at mouth of sewer." At the time this evidence was received, and at the time the motion to strike the same was overruled, it affirmatively appeared that appellant city had constructed a sewer system discharging into the stream at First street in the spring or summer of 1907, and that in 1920 there was, and for many years had been, adjacent and parallel to said sewer outlet, the piling or bulkhead which respondent claims to have been the cause of her injury in this case. It did not appear from the evidence at that stage of the proceedings that the municipal sewer system had any outlet into the stream other than the First street outlet. This evidence

was clearly admissible, subject to such explanation as appellant city might be able to make, as tending to show that the bulkhead in question was in fact constructed by appellant city or by its authority.

[4]  Appellant's third contention is that the court erred in sustaining the objection of respondent to the following question, propounded by appellant to one of its witnesses, having reference to the flood of 1920:

"Q. I wish you would just tell the jury, if you can, just what damages were caused by that flood generally throughout the city to other property?"

This ruling of the court was entirely correct.  Appellant was entitled to show in defense, if it could, that the 1920 flood was entirely unprecedented, but the amount of damage done by the flood was not a proper method of making such proof.  The damage done would depend upon a great many matters in addition to the violence of the flood itself, and would lead to an infinite number of remote and collateral issues, if permitted.

[5]  We come now to appellant's fourth contention as to the insufficiency of the evidence.  The first point made here is that there is no competent evidence that appellant authorized, constructed or paid for the bulkhead in question.  This seems to us frivolous.  The evidence of appellant's own witness, who was in charge of the sewer construction, is that he constructed the sewer outlet in question for the city in the spring or summer of 1907; that thereafter there was a severe flood which changed the channel of the stream, and he was compelled to extend the outlet some 2 rods to reach the water.  It further appeared from the testimony of appellant's witness Otto that he assisted one John Wight, or John White, in the installing of said piling or bulkhead in the fall of 1907, although he did not know for whom the latter was working.  There was the evidence of the city records, to which we have previously referred, showing that the city authorized the protection of the sewer outlet in the fall of 1907, and allowed bills for piling and bills of Wight and others for "labor at mouth of sewer."  There was the testimony of the city engineer of appellant that in his opinion the piling or bulkhead was properly constructed for the purpose of protecting the sewer, and that, while he was not connected with the city in 1907 and did not

know of the matter of his own knowledge yet the only thing that he could see for which this construction would be made would be to protect the sewer outlet, and that it was very good for such purpose. It is true that it appears in the evidence that in fact there were two sewer outlets into the stream, one at First and one at Fifth street, but there is no showing that the proceedings of the city council referred to the Fifth street outlet rather than to the First street outlet here involved, nor does it appear in the evidence that there was in fact any piling or bulkhead at the Fifth street outlet. There is not the remotest suggestion that the piling, as installed, was intended for or could serve any good purpose save only the protection of the sewer outlet. The evidence justifies but one possible conclusion on this point, which is that the city built, or authorized the construction of, the bulkhead in question.

[6] The other points upon which appellant relies as to the insufficiency of the evidence are briefly that there was no proof that the bulkhead or piling was negligently constructed, and that it affirmatively appears that the damage was caused solely by the unusual freshet of 1920, which was not in any wise aided or contributed to by the bulkhead, and that respondent was contributorily negligent in locating her improvements, thereby assuming the risk, and that she used no diligence to prevent or minimize the damage which she could have done at moderate expense. These questions were all peculiarly for the jury. It appears from the evidence without dispute that Rapid creek rises in the Black Hills some 40 miles west of appellant city; that it is a swift and turbulent stream, draining with its tributaries a large water shed with a pronounced fall; that with melting snows and heavy rains, in the words of one witness, "the stream is subject to periodic sprees," and subject to heavy annual floods. It appears that in at least five different years the spring freshet on the stream has been heavier than the ordinary annual spring freshet, being the years 1878, 1882, 1891, 1907, and 1920. It further appears that for some time prior to 1907 the channel of the stream had been in an easterly direction down St. Louis street. By the flood of 1907 the channel was shifted to the north approximately to what is denominated "1919 channel" on plaintiff's Exhibit 25, which is herewith shown:

PLAINTIFF'S EXHIBIT 25

The course of the stream continued in this 1919 channel without appreciable change from the creation thereof in 1907 to and until the flood of May, 1920, which again shifted the course of the stream to what is denominated on Exhibit 25 "present channel," and it is this last shift of 1920 which respondent claims was caused by the existence of the piling at the sewer outlet shown on Exhibit 25 at the corner of First and St. Louis streets. As to whether the 1920 shift, whereby respondent was damaged, was caused or contributed to by the piling, or was exclusively the result of the flood of 1920; the severity of the 1920 flood as compared with previous floods; whether any negligence was shown by respondent in selecting the site for her improvements; whether she could and should have protected the bank of the stream fronting upon her premises; and whether either respondent or appellant should have anticipated a flood such as the 1920 flood—were all matters in dispute, and were submitted to the jury upon the following instructions, in addition to proper and customary instructions as to preponderance of evidence, burden of proof, etc:

"The theory of the plaintiff, gentlemen, is that the sewer on the south side extended into the waters of the creek, and lay partly in what might be designated as the storm channel or overflow or

excess water channel of the creek, and that channel in a general manner extended in an easterly and westerly direction; that the city, in constructing this bulkhead, as we will call it, placed it in a northeasterly and south westerly direction to the extent of 50 or 60 feet within this storm channel; that just as soon as the waters rose in the ordinary manner, by reason of the rainfall and melting snows, they struck this bulkhead and were deflected in a northeasterly direction by reason of the bulkhead over and against the plaintiff's land; also contend that, by reason of the placing of the bulkhead, that tree seed were allowed to remain below the bulkhead and silt gathered in there, and the trees grew up there, which contributed with the bulkhead in deflecting the flow, and which would not have grown had it not been for the bulkhead as we will call it.

"Now the theory of the city, gentlemen, is that at that particular portion of the valley the creek banks were rather soft, gravelly, and sandy loam, and that the creek had been in the habit for many years, whenever a flood occurred, of changing its channel in various directions. And the city contends that in 1907, by reason of the flood, that the creek took a northeasterly course in the vicinity of the west boundary of First street and St. Louis avenue, and ran up toward and against the property of the plaintiff, and cut out considerable of her property in that flood, and that it would have continued in that direction without regard to what action the city had taken, that thereafter the city placed the bulkhead as a protection to the sewer in the street, in a line parallel to the then course of the stream, and that it did not constitute any obstruction at all, and would not constitute an obstruction.

"This proposition, Gentlemen, presents one of the questions of fact that the jury must pass upon.

"Now, gentlemen, the cause of action depends upon what is known to the law as negligence, the plaintiff contending that the defendant was negligent, the defendant contending that the plaintiff was negligent, and it is for the jury to determine whether either of the parties or both of them were negligent.

"Now, negligence, gentlemen, as it is defined by the law, is a failure to exercise ordinary care. I might say, gentlemen, that it is a proposition of law that one person shall not use his own

property in such manner as to injure the property of another, and that is the theory upon which the plaintiff is contending that the city was negligent in the use of their own property, to-wit, the bulkhead, and that in placing the bulkhead in that position they did not use the ordinary care which an ordinary, reasonable person would have exercised under the circumstances, considering the character of the banks, the nature of the stream, the probability and likelihood of the stream to rise in cases of periodical freshets. So the first thing the jury will determine is, Was the city of Rapid City negligent in placing the bulkhead in the creek in the manner in which it did? If the jury should determine that the city was negligent, then you would pass on and consider whether the negligence of the city was the proximate cause; that is, whether it was the agency that in the ordinary sequence would cause the damage that the plaintiff claims she suffered, because, even though a person may be negligent, unless that negligence is the proximate cause of another's injury, they cannot recover. Then if you find that the city was negligent in the construction of the bulkhead, and further find that the negligence was the proximate cause of the plaintiff's injury, you will consider whether or not the plaintiff herself was negligent in the manner in which she built her house in that particular location and in the failure of her to take any precautions prior to the flood for safeguarding it; it being the theory of the defendant that, even though the bulkhead was placed in a negligent manner that the plaintiff invited the damage by placing the large house in that vicinity and within the distance from the creek that she did place it and without taking any methods of safeguarding it.

"Now, if the jury believe from a preponderance of the evidence that the plaintiff was guilty of contributory negligence, then the plaintiff could not recover. Now, if you believe, gentlemen, that the plaintiff was not guilty of contributory negligence then you would consider what, if any, damage the plaintiff had suffered by reason of the negligence of the defendant, providing that you found that the negligence of the defendant was the proximate cause of her injury, as I say you would then consider what was the amount of damage that she suffered by reason of the act of the defendant (that is, if the act of the defendant did cause her any damage) whether it caused the entire damage she complains

of, or whether some of it might have been caused without the negligence of the defendant, and, if the entire amount was attributable and the proximate cause of the negligence of the defendant, then the amount that she would be entitled to recover would be the fair, reasonable amount that would compensate her for the damage that she suffered, and in that case, if you find that she exercised ordinary care in the moving of her house, that would be an element of damage that she could recover for; but, as I stated, if you do not find that all of the damage which she suffered was caused by the negligence of the defendant, then you would ascertain what portion of the damage that she suffered was the proximate result of the negligence of the defendant. In considering, gentlemen, whether the defendant city was negligent in placing this obstruction, you have a right to take into consideration the character of the ground, the character of the creek, the habits and history of the creek with reference to overflow, the character of the storm of 1920, and whether an ordinary, prudent person would have anticipated a storm of that kind."

[7-9] These instructions were more favorable to appellant than it was entitled to receive, in so far as they require respondent to show negligence in the construction of the bulkhead as a condition precedent to recovery. An upper proprietor has no right to erect an obstruction in a stream, thereby deflecting water to the injury of a lower proprietor, whether said obstruction is negligently constructed or not. No useful purpose would be served by detailing the evidence further. The jury, under instructions more favorable than appellant was entitled to receive, has found that at least part of the damage suffered by respondent was proximately caused by the bulkhead in question, and the evidence is ample to support the verdict.

[10] We turn, therefore, to appellant's fifth contention, based upon claims of error in the giving and refusing of instructions. Under this head appellant predicates error upon the refusal of the following instruction requested by it:

"Gentlemen of the jury, you are instructed that, if the plaintiff, by the use of ordinary diligence and efforts, and at a moderate expense, might have prevented the injury and damage alleged to have been done to her property by the flood of 1920, and failed to incur such expense and to exercise such ordinary care and

effort, her negligence contributed to the damage, and that such negligence on her part will defeat and entirely bar the plaintiff from recovering damages in this case, and if you find from the evidence that the plaintiff could have protected her property from the alleged injury and damage, and failed to incur such expense and to exercise such ordinary care and effort, she is guilty of contributory negligence, and your verdict in such case will be for the defendant."

This matter was amply covered by other instructions of the court above set out, and the refusal of the request was not error.

[11] Appellant also requested the following instruction, which was likewise refused:

"The court instructs you, gentlemen of the jury, that one of the issues in this case raised by the defendant in its answer to plaintiff's complaint is that during the month of May, 1920, the defendant municipal corporation and surrounding territory were visited by heavy, unusual, and extraordinary freshets and floods, over which defendant had no control, and which reasonable care and diligence could not guard against, and alleges that, if the bank of plaintiff's land was washed away during the month of May, 1920, as alleged in plaintiff's complaint, it was caused, in addition to her own carelessness and negligence, by such heavy, unusual, and extraordinary freshets and floods, and it is for you to decide from the evidence whether the said flood of 1920 was an extraordinary or unusual flood or freshet, and you are instructed that, if the damage was due to the unusual rainfall and not to the so-called bulkhead, then the city would not be liable to the plaintiff for any damages which she may have sustained."

[12] We believe this matter was sufficiently covered by the other instructions of the court, but in any event the refusal of the request was not error, inasmuch as the request was entirely too favorable to the appellant in its statement of the law. In the instant case the flood of 1920 was more than the usual annual spring freshet, but it was not without precedent. Appellant's witness Holmes testified that he had resided in Rapid City since 1877, and the first flood of which he had knowledge was in the spring of 1878, and there had never been any such flood since. Appellant's witness Brennan, who resided in Rapid City since 1881, stated that the flood of 1882 was the heaviest. Appellant's wit-

ness Foster, who resided in Rapid City since 1880, said that the flood of 1882 was heavier than that of 1920, that it was rather difficult to state whether the flood of 1891 was heavier than the flood of 1920, and that he thought the flood of 1907 was just as heavy and lasted just as long as the flood of 1920. We think the sound rule is that a person who obstructs a natural water course is required to anticipate and provide, not only for normal rainfall and melting snow, but for such floods or freshets as may occasionally occur, whether they be called ordinary or extraordinary. He is not liable for unprecedented floods of which the usual course of nature affords no premonition, but, if the flood in question is such a flood as experience has indicated might be expected to recur at irregular intervals, the person who so obstructs a natural water course that damage is caused by the flood such as would not have been caused without the obstruction is liable therefor. See extended note, Ann. Cas. 1918A, at page 1114. We think the court was right in refusing the request.

[13] Appellant bases error also on the giving of the following instruction over its exceptions, claiming that it eliminates from the consideration of the jury the affirmative defense as to unusual and extraordinary flood:

"Now, gentlemen, the cause of action depends upon what is known to the law as negligence, the plaintiff contending that the defendant was negligent, the defendant contending that the plaintiff was negligent, and it is for the jury to determine whether either of the parties or both of them was negligent."

The instruction complained of is too favorable to appellant, in so far as it bottoms appellant's liability solely upon negligence, and the matter of the nature of the 1920 flood was elsewhere covered in the instructions fully as favorably as appellant was entitled to.

[14] The appellant also objects to the giving of the following instruction, for the reason that it assumes the construction of the bulkhead by the city:

"So the first thing the jury will determine is, Was the city of Rapid City negligent in placing the bulkhead in the creek in the manner in which it did?"

The question of the evidence as to who constructed the bulkhead we have previously discussed. There was no dispute on this

point in the testimony, and the jury could have reached no conclusion but that the same was constructed by appellant city, and therefore it was not error to assume that fact in the instruction. State v. Shepard, 30 S. D. 219, 138 N. W. 294; Duprel v. Collins, 33 S. D. 365, 146 N. W. 593.

After a careful consideration of all contentions of appellant, and of the entire record, we find no reversible error.

The judgment appealed from is affirmed.