TRACY, Respondent, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

(216 N. W. 868.)

(File No. 6097. Opinion filed December 20, 1927.)

*Newton, Dullam & Young,* of Bismarck, and *C. A. Oppenborn,* of Twin Falls, Idaho (*John E. Palmer,* of Minneapolis, Minn., of counsel), for Appellant.

*M. G. Dubel,* of Mound City, and *A. H. Smith,* of Selby, for Respondent.

BURCH, J.   Plaintiff brings this action to recover damages caused by the flooding of the basement of his grocery store, in the town of Pollock, S. D.   Pollock is situated in the valley on the north side of Spring creek, a tributary of the Missouri river.   Running through the west edge of the town is a creek, tributary to Spring creek, which drains about 18 sections of land to the northwest of the town.   This creek is usually dry, but carries considerable water after a rain.   To the east of town about a mile is a similar creek draining about 25 sections to the north and northeast of town.   The town is on land nearly level, sloping a trifle to the southwest.   There are hills to the north, and the creeks often overflow their banks after a heavy rain, flooding the low land in and near the town.   Defendant's railroad tracks enter the town from the southeast, run along the south edge of the town, between the town and Spring creek, ending in the southwest corner of the town.   At or near the end of the tracks is a wye for turning trains, extending from the north side of the main track.   Thus the railroad grade forms an arc across the southwest corner of the town in the course of the natural drainage of the town and vicinity.   Near the center of the arc formed by the main track and wye there is a round culvert about three feet in diameter for passage of the water through the railroad embankment.   The west dry creek runs west of the wye and does not drain through the culvert.   The

culvert was constructed to permit drainage of approximately a section of land, the water therefrom finding its way to the culvert through slight natural depressions through the town. About 6 o'clock on the morning of July 4, 1923, there was a heavy rain lasting about an hour in which 2.4 inches of rain fell. In a short time thereafter the dry creek to the west of town was out of its banks and the southwest part of town was covered with water, and a considerable pond formed just above the wye. Some time later the east creek was out of its banks and a large volume of water from the northeast swept over the town, mingling with the waters of the west creek, so that the entire stretch between the two creeks was covered with water, making its way to Spring creek in a general southwesterly direction toward the railroad embankment. The flood reached its crest about 11 o'clock in the forenoon, and at that time water was running over nearly if not all of the wye embankment and over the main track a considerable distance to the east. About 700 feet to the northeast of the wye in the path of the water appellant's store was situated. The water rose high enough to run into the basement windows and damaged appellant's merchandise. It is claimed the railroad embankment dammed the water and held it back so as to raise the level of the water at plaintiff's store and that but for this plaintiff would not have been damaged. Judgment for plaintiff and defendant appeals.

The sufficiency of the evidence to support the judgment is the only question presented. The town was built at the time or just after the railroad was built, so there is no question of prior rights involved. If the defendant railroad company is liable it is because of negligence in the construction, maintenance, or operation of its tracks. To fix a liability on the railroad it is necessary to show that the railroad was the proximate cause of the injury and that the injury was the result of negligence.

The evidence that the railroad was the proximate cause of the injury is not convincing. It is undisputed that the railroad was laid in an arc across the southwest corner of the town, that the slope of the land was in that direction, and the general trend of the flood water from the vicinity of respondent's store was towards the railroad tracks; that the railroad embankment acted as a dam and held back the water for some distance, the culvert not being sufficient to drain the water through the embankment as fast as

it came, and that the water rose above the embankment until it overflowed, but there is no direct evidence that the embankment was high enough to raise the water to a height sufficient to reach respondent's store. If it was not it is obvious that the damming of the water below respondent's store could not harm him. The only direct evidence as to the height of the dam compared with respondent's store is that respondent's basement windows were about 18 inches higher than the embankment and that the water could not be raised so as to damage respondent. This direct evidence was from engineers, found by actual measurements, and it is not disputed. But following the rule announced by this court that a verdict rendered on conflicting evidence will not be disturbed on appeal if there is sufficient to support it, and appellant's evidence will not be considered, except as it tends to prove respondent's case (Jeanisch v. Lewis, 1 S. D. 609, 48 N. W. 128; Wingfield v. Little, 41 S. D. 60, 168 N. W. 716; State v. Wold, 48 S. D. 242, 203 N. W. 508), we will confine ourselves to respondent's evidence on this point. Respondent's store is on the east side of main street about 25 feet north of a hotel, there being a vacant lot between the two buildings. In front of these buildings is a sidewalk somewhat higher than the ground of the lots on which the buildings stand. At the front of the buildings across the vacant lot there was a compo-board fence. Respondent's witnesses stated they saw the water backing up from the direction of the tracks from the south around the back of the hotel and over the vacant lot to respondent's basement windows, but they also say the flood was coming from the northeast. The land was a trifle higher to the south, and the witnesses may have seen a current of water coming around the back of the hotel from the south and be wrong in their conclusion that the water was backing up from the railroad. The hotel man says he punched a hole in the compo-board fence and the water ran out across the sidewalk toward the railroad. This conclusively shows the water on the vacant lot adjoining respondent's basement windows was higher than the water nearer the tracks. There is no evidence that this condition did not exist at the highest stage of the flood, and respondent's evidence does not support his theory that the embankment held the water back so as to flood his basement. We have analyzed all of respondent's evidence and think it fails to prove that the railroad caused the damage.

The evidence is, however, more obviously insufficient to prove negligence, and for that reason we devote some space to the evidence on that point. There is no contention that the embankment is unnecessarily high. If there is any fault in construction it is in providing insufficient drainage through the embankment. The railroad was laid before the town was built up, and the culvert at that time was designed to drain less than a section of land, and there is no evidence that it was not then adequate. If, later, a larger culvert became necessary, there is no evidence when it became necessary or when appellant had notice of such necessity. There is evidence that no damage had resulted from previous floods and that the flood of July 4, 1923, was an unprecedented flood against which appellant was not bound to guard, because not to be anticipated. What constitutes an unprecedented flood as distinguished from an unusual or extraordinary flood is clearly stated in Stewart v. Rapid City, 48 S. D. 554-569, 205 N.W. 654-660. The evidence in this case strongly tends to prove this flood was unprecedented. The highway leading out of town had been graded and improved, and where it crossed the creek to the east a bridge with a capacity very much less than the railroad bridge across the same creek did not provide a means for the passage of the water down the creek, so that a large part (four-fifths, according to the engineers) of the water coming down that creek was diverted by the grade to the west down and across the town and over the railroad embankment in such quantity that the entire portion of the track complained of was overflowed. It is not apparent that the railroad could have been constructed in any manner so as to have lessened the damage caused by that flood. Accepting all respondent's evidence as true and giving to it every fair inference, it falls short of proving negligence on the part of appellant. The trial court erred in refusing to direct a verdict in favor of appellant because of the insufficiency of the evidence to support respondent's case.

The judgment is reversed, and the trial court is directed to dismiss the action on its merits.

CAMPBELL, P. J., and POLLEY, J., concur.

SHERWOOD and BROWN, JJ., not sitting.